UNITED STATES of America, Appellee,

v.

Alan RIGGS, Defendant, Appellant.

No. 82–1215.

United States Court of Appeals,
First Circuit.

Submitted Sept. 17, 1982.

Decided Oct. 13, 1982.

Angelo P. Catanzaro, Jerry C. Effren, and Catanzaro & Effren, P. C., Boston, Mass., on brief for appellant.

William F. Weld, U. S. Atty., and Joan C. Stanley, Asst. U. S. Atty., Boston, Mass., on brief for appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant Alan Riggs appeals his conviction for importing obscene material in violation of 18 U.S.C. § 1462.[1] Although he admits that the search warrant was valid with respect to a 200-foot film seized during a search of his home, Riggs contends that the warrant's overly broad description of other evidence invalidates the warrant in its entirety. We disagree.

The facts surrounding the issuance of the warrant are undisputed. On June 3, 1980 United States customs agent Ulherr requested a warrant to search Rigg's home. In support of his request Ulherr set forth two facts in an affidavit. First, Ulherr stated that he had received a report from United States customs officials in Germany concerning the investigation of a German distributor of child pornography. According to the report, German officers had recovered a customer card bearing Riggs's name, and Massachusetts address and the words "Lolita," "girl," and "kinder." A copy of this card was included in the report sent to Ulherr. Second, Ulherr stated that on May 1, 1980 during a routine examination of foreign mail, a Boston mail technician opened a parcel addressed to Riggs.[2] The parcel bore Danish postage and contained a film approximately 200 feet in length. Observing that the film depicted unclad juveniles, the technician notified Ulherr who viewed the film in its entirety. After viewing the film, which he described in the affidavit as depicting "unclad prepubescent juveniles, mostly females in both simulated and actual sexual conduct with other children and adults," Ulherr rewrapped the parcel and arranged its delivery in normal course to Riggs's home.

Based on this affidavit, a warrant issued authorizing seizure of the parcel containing the film and

> paper, letter, writing, print, or other matter of indecent character;
>
> .   .   .   .   .
>
> Shall be fined not more than $5,000 or imprisoned not more than five years . . . .

---

1. 18 U.S.C. § 1462 provides in part:

   Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

   (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film,

2. Riggs does not contest the legality of this procedure.

any and all correspondence regardless of whether taped, typed or written, check books, stubs, record books, personal checks, money orders, receipts, cashiers' checks, brochures, advertisements, catalogs, and bills of lading, which relate both to the solicitation, importation, and mailing of said parcel in violation of 18 U.S.C. § 545, 1462, and 2252 ... and to the solicitation, importation, and mailing of similar [prohibited] merchandise ... as well as photographs, slides, films, negatives, magazines, and other reading material depicting unclad prepubescent and pubescent juveniles engaged in both simulated and actual sexual conduct, including any and all forms of sexual intercourse whether genital-genital, oral-genital, anal-genital, or oral-anal, as well as bestiality, masturbation, exhibition of the male and female genitals, and any photographs, slides, films, negatives, magazines and other reading material, depicting individuals who have been previously involved as participants in said sexual conduct, which articles are evidence and fruits of or reflect the illegal importation and smuggling of prohibited merchandise . . . .

Government agents executed the warrant the next day shortly after observing the delivery of the parcel containing the film. In addition to the parcel the agents seized magazines, photographs, and other films depicting "child pornography," and 400 cancelled checks.

Contending that the warrant fails to describe the items to be seized with the particularity the fourth amendment requires, Riggs asserts that the district court should have suppressed all the evidence seized during the search. In the brief he submitted in support of his pretrial motion to suppress, Riggs admitted the validity of the seizure of the film. He argued, however, that the warrant failed to describe the other evidence seized with the requisite particularity. This flaw, according to Riggs, contaminated the entire warrant and required the suppression of the film as well. Apparently agreeing that the government impermissibly seized the other evidence, the district court ordered the suppression of everything except the film.[3] On appeal, Riggs argues first that the warrant impermissibly authorized the seizure of the other evidence [4] and second that the district court erred in severing the film and suppressing only the tainted evidence.

I.

We need not pass upon Riggs's arguments that the warrant lacked both particularity and a basis in probable cause insofar as it allowed seizure of materials other than the film, nor need we determine the correctness of the district court's suppression order. Since we hold below, in response to Riggs's second argument, that the film was admissible whatever the admissibility of the other evidence—and since only the film was admitted—it is academic whether the warrant properly allowed the seizure of these other items. On this score, we note merely that the warrant's infirmity is by no means plain. The warrant was arguably quite explicit and limited, making it particular enough; Riggs's best point may not be lack of particularity but lack of probable cause to have seized materials other than the film. *See Marcus v. Search Warrants,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). In any case, even assuming the

---

3. Initially, the district court denied Riggs's suppression motion in its entirety. Riggs then agreed to be tried to the bench on stipulated facts. At trial, the stipulation made it clear that the government would introduce only the film; the district court amended its ruling sua sponte and ordered everything suppressed except the film.

4. Riggs argues that the government waived its right to contest the district court's order suppressing everything except the film. This follows, Riggs reasons, from the government's failure to object to the district court's partial suppression order. We need not decide this question in view of our holding in Part II of the opinion that the district court properly admitted the film, but we note in passing that the government was not prejudiced by the district court's ruling and can hardly be expected to have objected. In any event Riggs puts in issue the validity of the warrant in its entirety, and we think the government may respond in kind.

worst—that the warrant had infirmities justifying suppression of the other materials—the court did not err in admitting the film. We turn now to that issue.

## II.

Riggs's argument for suppressing the film proceeds on the assumption—one we accept for the sake of argument—that the warrant impermissibly authorized the seizure of the magazines, photographs, and personal documents. The warrant's flaws as to this evidence, Riggs contends, invalidate the entire warrant and require the suppression of not only the tainted evidence but also the film. This follows, Riggs continues, because the tainted evidence and the film are similar in kind, are evidence of the same crime, and were seized pursuant to the same overly broad warrant. This close connection Riggs concludes, requires suppression of all evidence seized rather than the partial suppression of tainted evidence ordered by the court.[5]

As authority for the proposition that blanket suppression is an appropriate remedy for a partially defective warrant, Riggs relies heavily on *United States v. Burch,* 432 F.Supp. 961 (D.Del.1977), *aff'd mem.,* 577 F.2d 729 (3d Cir. 1978). In *Burch,* the court confronted a warrant that sanctioned the seizure of stolen automobile tires and other "unknown articles which are believed and reported to be stolen." During the search, government agents seized the tires and a variety of other evidence but at trial the government sought to introduce only the tires. Reasoning that the tires were the fruits of a single unconstitutional search, the court ordered their suppression. *See also United States v. Hatfield,* 461 F.Supp. 57, 58 (E.D.Tenn.1978) (warrant issued without probable cause as to some items seized; court ordered blanket suppression), *rev'd on other grounds,* 599 F.2d 759 (6th Cir. 1979); *Kinsey v. State,* 602 P.2d 240, 243 (Okla.Crim.App.1979) (overly broad warrant tainted all evidence seized requiring blanket suppression).

Although Riggs admits that there is authority supporting partial suppression, we think he understates the weight of this authority. In *United States v. Cook,* 657 F.2d 730, 734–36 (5th Cir. 1981), a case Riggs fails to cite, the court concluded after an exhaustive survey that the weight of authority favored partial suppression. We need not recite the cases compiled there; it is enough to observe that the *Cook* court's plenary consideration of the issue seems more deserving of weight than the Third Circuit's memorandum affirmance of *United States v. Burch, supra.* We note, moreover, that the Third Circuit has recently embraced the principle of partial suppression in an opinion that squarely rejects the *Burch* analysis. *See United States v. Christine,* 687 F.2d 749 (3rd Cir. 1982). *See also United States v. Cardwell,* 680 F.2d 75, 78–79 (9th Cir. 1982) (accepting partial suppression but finding that no portion of the warrant could withstand particularity and probable cause challenges).

We find further support for the conclusion that partial suppression remedies the warrant's flaws in Professor LaFave's discussion of the question.

[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.... It would be ironic, to say the least, if the efforts of the police to therefore "advise the court of everything which conceivably might be found in the premises" should result in the warrant being declared invalid in its entirety.

2 W. LaFave, *Search and Seizure* § 4.6(f) at 111–12 (1978) (citation omitted). Moreover, we note that virtually every state court has followed the leading case, *Aday v. Superior Court,* 55 Cal.2d 789, 13 Cal.Rptr. 415, 362

---

**5.** The decisions of other courts treat this question as involving an issue of "severability," *see United States v. Cook,* 657 F.2d 730, 734–35 (5th Cir. 1981), i.e., whether the trial courts should "sever" the defective portion of the warrant and suppress only the items seized pursuant to the defect. We use the words "partial suppression" to convey this idea.

P.2d 47 (1961), in upholding the partial suppression remedy. *See United States v. Giresi,* 488 F.Supp. 445, 459 n.17 (D.N.J.1980) (collecting cases). *But see Kinsey v. State,* 602 P.2d 240, 243 (Okl.Cr.App.1979).

Also instructive are cases involving police officers who exceed the bounds of the warrant during its execution. Defendants have argued that the appropriate remedy in such cases is suppression of all evidence seized, but the courts have suppressed only those items that were not described in the warrant. *See In re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 130 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). From a policy perspective a rule requiring blanket invalidation of overbroad warrants would seem ill advised. To see that this is so, consider the likely response of a government agent who has probable cause to believe that a search of the home of a defendant like Riggs will uncover both a film and other evidence of illegal activity, but is not sure exactly what the other evidence is, other than being of a pornographic nature. The agent might be loath to risk invalidation of the entire warrant by requesting authority to search for other evidence. The agent knows, however, that if he seizes unauthorized evidence during the search for the film, he risks only the suppression of the unauthorized fruits. This suggests that while a blanket suppression rule may narrow search warrants, it probably would not appreciably narrow the scope of searches.

We hold that the partial suppression order entered below adequately eliminated any constitutional infirmities in the warrant.

*Affirmed.*