**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Lee BROWN, Defendant– Appellant.**

**No. 91–2279.**

United States Court of Appeals, Tenth Circuit.

Jan. 21, 1993.

Rehearing Denied March 31, 1993.

---

Louis P. McDonald, Albuquerque, NM, for defendant-appellant.

Tara C. Neda, Asst. U.S. Atty. (Don J. Svet, U.S. Atty. and James T. Martin, Asst. U.S. Atty., with her on the brief), Albuquerque, NM, for plaintiff-appellee.

Before BALDOCK, SETH and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant Robert Brown appeals his conviction for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. Mr. Brown contends that the district court erred in denying his motion to suppress. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

## Background

On January 29, 1991, a state search warrant was issued based on the affidavit of detective Robert Radosevich (Warrant I). The affidavit stated that the district attorney's office had approached the detective in reference to an informant who had information concerning the theft and dismantling of motor vehicles. The informant stated that he spoke with two people at a house and was told that several vehicles on the premises were stolen, and that the two people sold the stolen vehicles by exchanging vehicle identification plates from salvaged vehicles and registering the stolen vehicles. The informant also reported that the same parties had offered to sell him

carpeting for $1 per yard, a copier for $100, a computer, guns and electric motors.

The detective drove by the house described by the informant and observed an individual under a partially dismantled truck doing some type of work with a cutting torch. He also observed another truck that the informant had stated the occupants of the house had claimed was stolen. The detective then learned that the utilities to the home were in the name of R.L. Brown.

> Warrant I authorized a search for:
> Vehicle parts to include the following, but not limited to: Bumpers, grills, fenders, hoods, cabs, dashes, truck beds, engines, transmissions, drive shafts, frames, rear ends, springs, steering parts, seats and other interior parts, VIN plates, titles, vehicle registrations, blank registration forms, bills of sale, blank titles, drive-out stickers, broadcast sheets, EPA stickers, windows, doors, tires, rims and truck bed toolboxes. Tools or toolboxes which are stolen or contain tools that can be used to disassemble or reassemble any vehicle, welders and cutting torches, air compressors, computers, computer components, photocopy machines, firearms, protective devices, carpeting which also may be stolen. Any other item which the Officers determine or have reasonable belief is stolen while executing this search warrant.

After the execution of Warrant I, and because items not specifically described in Warrant I were observed, a second state warrant was applied for on February 7, 1991 (Warrant II). Warrant II authorized the following seizure:

> The property to be seized is a Quasar Microwave, serial number AW702701085. A brown Cedar chest that is faded on the top lid and has a tray on the inside, approximately 3' wide and 4' in length and approximately 2½' to 3' in depth, any other item which the Officers have determined or have reason to believe is stolen, while executing this search warrant.

During the execution of Warrant II, the officers detected a strong odor of methamphetamine on the individuals present. They found a methamphetamine laboratory in the garage and drug paraphernalia and a substance which the officers suspected was methamphetamine in the house. Based on this information, a federal search warrant (Warrant III) was issued and executed that same day. The evidence seized during the execution of Warrant III led to Mr. Brown's conviction.

Defendant filed a motion to quash the three warrants and to suppress all evidence seized pursuant to the warrants. The motion was denied and defendant was tried by a jury and convicted. Mr. Brown contends that the first two warrants were overbroad and that evidence derived from Warrant II was fruit of the illegal Warrant I. He also contends that the sole basis for Warrant III was Warrants I and II, thus the evidence seized under Warrant III was fruit of the illegal first two warrants.

### Discussion

### I. Probable Cause

The Fourth Amendment prohibits the issuance of a warrant except upon probable cause. Under *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." On review, we must "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

■ The informant mentioned in the affidavit was able to provide several verifiable details. He stated that an occupant of the house had described two stolen vehicles, a 1970's Ford pickup and a 1986 Ford pickup. The informant also saw a red Chevrolet El Camino and a motorcycle. The affiant-offi-

cer drove by the residence and saw all of these items and, in addition, observed that someone was working on the partially dismantled 1970's pickup with a cutting torch. We find that the corroboration of " 'seemingly innocent activity became suspicious in light of the initial tip.' " *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13 (quoting *People v. Gates*, 85 Ill.2d 376, 53 Ill.Dec. 218, 227, 423 N.E.2d 887, 896 (1981) (Moran, J. dissenting), *rev'd*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

With such corroboration, the issuing magistrate had a " 'substantial basis for crediting the hearsay' " included in the tip. *Gates*, 462 U.S. at 244–45, 103 S.Ct. at 2335 (quoting *Jones*, 362 U.S. at 269, 80 S.Ct. at 735); *see also United States v. Hager*, 969 F.2d 883, 886–87 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). A male and a female who resided at the house admitted to the informant that they had stolen several vehicles, providing details regarding their scheme to reregister the vehicles. The couple offered to sell various items, including the trucks, toolboxes, rolls of carpet and a copier, for well below their market value.

We conclude that there was a substantial basis for the judge to determine that ample probable cause supported Warrant I.

## II. Particularity

■ The Fourth Amendment requires that warrants describe both the place to be searched and the things to be seized with particularity. *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). The search should be "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). The issue of whether a warrant is overbroad is subject to de novo review by this court. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988).

■ At issue in this case is the effect of the language in each of the two warrants quoted in part above (Warrants I and II). Each of these warrants described, with specificity, some items to be searched or seized, but added an authorization to search or seize other items which the officers determined or reasonably believed to be stolen. Mr. Brown argues that this language renders the warrant unconstitutionally broad.

We find *United States v. LeBron*, 729 F.2d 533 (8th Cir.1984) instructive. There, a warrant authorized a search for a list of specific items as well as for "other property, description unknown, for which there exists probable cause to believe it to be stolen." *Id.* at 536. That language, the court found, was not descriptive and did not adequately limit the discretion of the officers. *Id.* at 536. The instant warrant contained language very similar to the *LeBron* warrant.[1]

■ However, as in *LeBron*, the questionable portion of the warrant may be severed. " '[T]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant ..., but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during their execution).' " *LeBron*, 729 F.2d at 537 n. 2 (quoting *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983) (en banc), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984)).

At least eight circuits have held that where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid. *See United States v. George*, 975 F.2d 72, 79 (2d Cir.1992); *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 881,

---

**1.** Because we agree for purposes of this opinion that the contested language was overbroad, much of the dissent's discussion is superfluous. The dissent also contends that the cases we rely upon are distinguishable because the overbroad portion in this case "describes the legal status" of items which may be encountered during the search. Dissent at 1081. The cases cited in this opinion do not consider the overbroad language beyond the determination that it is impermissible and should be stricken or redacted.

116 L.Ed.2d 785 (1992); *United States v. Holzman*, 871 F.2d 1496, 1510 (9th Cir. 1989); *Fitzgerald*, 724 F.2d at 636–37; *United States v. Riggs*, 690 F.2d 298, 300 (1st Cir.1982); *United States v. Christine*, 687 F.2d 749, 759–60 (3d Cir.1982); *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 130–33 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *United States v. Cook*, 657 F.2d 730, 734–35 (5th Cir.1981).[2] *See also* 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 3.4(f) at 229 (1984). In such cases, only those items confiscated under the overbroad portion of the warrant are suppressed. *George*, 975 F.2d at 79.

In both *Holzman* and *George*, the courts recognized that the seizure of articles found in plain view could be upheld if part of the warrant was valid. They reasoned that if the officers were legally upon the premises under any set of circumstances, items in plain view could be legitimately seized. *See Holzman*, 871 F.2d at 1512; *George*, 975 F.2d at 78–80. *See also Horton v. California*, 496 U.S. 128, 138–39, 110 S.Ct. 2301, 2309, 110 L.Ed.2d 112 (1990) (if officer has lawful right of access, discovery of other incriminating evidence need not be inadvertent).

█ In this case, although one sentence in the warrant may have been overbroad, the infirm portion may be isolated and severed from the constitutionally adequate part. Because the state officers were legally on the premises and smelled the odor of methamphetamine, their call to the DEA agent is not tainted, *George*, 975 F.2d at 80, and the warrant obtained with that information is not invalid. While we had not directly addressed this issue until now, we recognized it in *United States v. Leary*, 846 F.2d 592, 606 n. 25 (10th Cir.1988) (citing cases where severance was appropriate, but concluding severance was not possible because no portion of the warrant in that case adequately described the items to be seized).

Because the officers executing Warrant II were legitimately on the premises when they discovered or smelled the methamphetamine laboratory, the third warrant issued at the instance of federal agents is valid.

AFFIRMED.

SETH, Circuit Judge, dissenting:

I must respectfully dissent from the majority opinion.

The majority holds that the overbroad portions of the warrants can be severed from the warrants, and thus the state officers were validly present when they detected the methamphetamine laboratory and contacted the DEA officers. Although the majority correctly notes that severance is an appropriate remedy in some cases, as discussed below, in this case the overbroad language so tainted the entire warrant that severance is not justified. I find that the warrants were grossly overbroad and thus the officers were not legitimately present on the premises. I would suppress the evidence.

The concluding sentence in Warrant I authorized the search of: "[a]ny other item which the Officers determine or have reasonable belief is stolen while executing this search warrant." Similarly, the concluding language of Warrant II authorized the search of items which the officers "have determined or have reason to believe" are stolen. These concluding statements follow a good listing of particular items of personal property although some descriptions are conditioned on the item being "stolen." The concluding provisions however are not descriptions of any tangible thing which is sought. At most, they are references to the legal status of any "items" the officers might see and "determine" to be stolen. The warrants would thus seem to be without any descriptive limits. Whether the warrants are general

---

**2.** The dissent argues that these cases are distinguishable because they involve "vague broad, and general descriptions of property which can be placed in some general category to permit

severance." Dissent at 1081. To the contrary, the overbroad nature of the search warrant in *LeBron* is indistinguishable from the warrant before us.

warrants must be examined. The detective who obtained the warrants testified that: "Our procedure is anything we can identify as stolen, we seize.... [A]ny property that is reasonably found to be stolen would be seized."

The search under Warrant I also had an unusual variation as mentioned later. It lasted over a period of two or three days and included were town "people" who had reported property stolen and who were allowed to come on the premises to identify and claim "their property." This public participation seems at least to add an unusual expansion of the search. Over the period of the "search," about eleven officers participated, and these apparently were the "we" in the above quotation of the detective. It also appears that during the search under Warrant II a federal DEA agent was called. Two DEA agents joined the group and were shown around the premises to see what the state officers had found. The "visit" under Warrant II was the basis for Warrant III.

The Fourth Amendment requires that warrants "particularly describe the place to be searched, and the person or things to be seized." This requirement ensures that the scope of a search is limited to particularly described evidence relating to a specific crime for which there is demonstrated probable cause. *Voss v. Bergsgaard,* 774 F.2d 402 (10th Cir.). The particularity requirement prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, and makes impossible general searches leaving nothing to the discretion of the officer executing the warrant. *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431.

Defendant maintains that the final sentence of the description of property to be seized in Warrant I, "[a]ny other item which the Officers determine or have reasonable belief is stolen while executing this search warrant," leaves too much to the discretion of the many officers under *Stanford.* It fails to meet the particularity requirement. To determine if the descrip-

tion of the items to be seized is "particular" courts generally apply the practical test of whether the descriptions of items in the warrant itself enables the searcher to reasonably ascertain and identify the things authorized to be seized. *United States v. Wolfenbarger,* 696 F.2d 750 (10th Cir.). It requires a *description of tangibles ascertainable from the warrant.* Similarly, in *United States v. Leary,* 846 F.2d 592 (10th Cir.), we held that *a warrant itself* must at the minimum allow the officers to distinguish between items that may and may not be seized.

In this case, the language "[a]ny other item which the Officers determine or have reasonable belief is stolen" does not limit the search in any meaningful way. The phrase cannot, as the government asserts, be interpreted as contextually related to the preceding list of items because the list is already subject to a catch-all provision at the start of the list, "including, but not limited to." Nor can the phrase be interpreted as an articulation of the "plain view" doctrine, in which fruits or instrumentalities of a crime that are in plain view of an officer who is legitimately present may be seized without a warrant, because that doctrine requires a finding of probable cause as to those items, *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 and the warrant allows seizure for mere "reason to believe" the item was stolen. The appearance of the items did not signal whether they were stolen. The phrase must therefore be read as intending to encompass unanticipated items that fall short of the "plain view" doctrine, and thus expands to a limitless extreme the items that the executing officers could search.

This interpretation is reinforced by Detective Radosevich's own interpretation of the warrant as mentioned. He testified that he had sole discretion to determine what property was stolen, and thus what property could be seized. Consequently, the broad authorization to seize any items that the officers determined were stolen failed to provide any guidelines to the exe-

cuting officers as to what property was stolen and could be seized.

Moreover, the proceedings of the search itself illustrate the exploratory nature of the search. Warrant I authorized a search on January 29, 1991, between 6:00 a.m. and 10:00 p.m. However, the search lasted for fifty-one hours, ending on January 31, 1991.

Some courts have characterized a search under an overbroad warrant as "rummaging." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. This is an apt description here not only by reason of the officers' actions, but for the added participants. These were various people who had reported property stolen who were allowed on the premises to identify and claim "their" property.

The absence of particularity of the Warrant I is further illustrated by the items actually seized. In addition to the numerous auto parts and tools taken, the officers seized a fishing reel, turquoise stones, Christmas wreaths, Christmas lights, and a bug sprayer. The detective admitted that they were unable to confirm that all of the items seized were in fact stolen. Such seizure of personal property exemplifies the inherent dangers of allowing a warrant to be so broadly drawn.

I acknowledge that a warrant describing items to be seized in broad and generic terms may be valid if the description is as specific as the circumstances and the nature of the activity under investigation permit. *United States v. Harris*, 903 F.2d 770, 775 (10th Cir.), citing *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.). However, in this case the property believed to be stolen was described with sufficient particularity. The government only had information regarding vehicles and other articles relating to a "chop shop," and possibly carpeting, a copier, a computer, guns and electric motors.

Because Warrant I is facially and grossly overbroad, the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, which prohibits exclusion of evidence obtained by officers acting in reasonable reliance on a search warrant that is ultimately found to be invalid, will not apply. In *Leon* the Court said:

> "[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

468 U.S. at 923, 104 S.Ct. at 3421.

In *Leary* we held that the warrant was so facially deficient that the executing officers could not have reasonably relied on it, and thus the government could not rely on the "good faith" exception. We there stated:

> "A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized. A warrant that directs an officer to seize records 'relating to' violations of the federal export laws offers no such guidelines. The officers were left to their own discretion."

846 F.2d at 609. Similarly, Warrant I, directing the officers to seize any item they reasonably believe is stolen, was so facially deficient in its description of property to be seized that the officers could not have reasonably relied on it. The nature of the "search," the participants, and the list of the items seized reinforces this conclusion. The good faith exception is not applicable.

I therefore find that Warrant I is invalid because the description of the items to be seized lacks particularity in contravention of the Fourth Amendment.

Defendant contends that Warrant II is invalid for two reasons: first, because it contains similar language to Warrant I, making it overbroad itself; and second, because it was the direct result of Warrant I, which is invalid.

Like Warrant I, Warrant II lists in its description of property to be seized "any other item which the Officers have determined or have reason to believe is stolen." For the reasons stated above, this language makes Warrant II in violation of the particularity requirement.

With the illegality of the search under Warrant I, it must be determined whether the evidence derived from Warrant II was "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (quoting Maguire, Evidence of Guilt 221). Detective Radosevich testified he obtained Warrant II in order to seize the evidence observed but not taken during the execution of Warrant I. Since I find that the search under Warrant I is illegal, it is clear that Warrant II was a direct result of exploitation of that illegality. Therefore, for this second reason, the evidence seized pursuant to Warrant II may not be used against Defendant.

During the execution of Warrant II, the state officers discovered a methamphetamine laboratory, drug paraphernalia, and suspected methamphetamine. Sergeant Rehm contacted the DEA and requested that personnel be sent to assist them in the investigation of the case. DEA Agents Brown and Spaulding responded to the request. The agents observed the laboratory and spoke with an Albuquerque Senior Criminalist/Drug Chemist regarding the laboratory. Based on this visit at the invitation of the state officers, Agent Brown requested and was issued Warrant III.

Warrant III was thus derived entirely from the illegal presence and search under Warrant II. The DEA agents were called solely because of the discovery by the local officers of the methamphetamine laboratory. The laboratory may have been assembled after the extended search under Warrant I. Warrant II was illegal. Warrant III exploits the illegal presence of the DEA agents on the premises under Warrant II by invitation of local officers. This was the chance the agents had taken and the decision made in going on the premises under Warrant II illegally with the local officers. The record does not show whether there were town "people" on the premises at that time.

The "good faith" exception of *Leon* cannot validate Warrant III. As mentioned, the DEA agents responded to a call from the state officers to assist the state officers in the execution of Warrant II. However, since that warrant was invalid, the DEA agents were assisting in the execution of an illegal search. The illegal search cannot subsequently be validated by obtaining a federal warrant. In *United States v. Scales*, 903 F.2d 765 (10th Cir.), DEA agents seized a suitcase and held it for twenty-four hours before obtaining a search warrant. We stated that the search of the suitcase after the warrant was issued would not prevent us from evaluating the agent's behavior prior to the warrant, and held that since the DEA agents were not acting in reliance on a search warrant when they seized the suitcase and held it for twenty-four hours, *Leon* does not ratify their actions. Similarly, before the DEA agents in this case obtained Warrant III, they were illegally present on the premises pursuant to Warrant II. Thus, as in *Scales*, Warrant III cannot ratify their presence. Because I find that the officers who executed Warrant III had no valid purpose for being on the premises, the officers cannot rely on the "good faith" exception to the exclusionary rule of the Fourth Amendment.

The majority cites several cases in which a warrant contained both specific and unconstitutionally broad language, and the court severed the overbroad language from the warrant so that the remainder of the warrant was valid. These cases are factually distinguishable because they involve vague, broad, and general descriptions of property which can be placed in some general category to permit severance. In this case, the sentence at issue does not describe any tangible property, but instead describes the legal status of any items which may be encountered during the course of the search. The identification of the items is to be made during the search, and thus the warrant permits the search-seizure of absolutely anything at all believed to be stolen. The Supreme Court invalidated a similar warrant in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920. In that case, a warrant authorized the search of an adult

bookstore and the seizure of two particular films as obscene, as well as "[t]he following items that the Court independently [on examination] has determined to be possessed in violation of Article 235 of the Penal Law...." 442 U.S. at 321–22, 99 S.Ct. at 2322 (footnote omitted). No items were listed following this statement, and the application stated that the purpose was to allow the Town Justice to determine independently if any other items at the store were possessed in violation of law and subject to seizure. The Court stated:

"This search warrant and what followed the entry on petitioner's premises are reminiscent of the general warrant or writ of assistance of the 18th century against which the Fourth Amendment was intended to protect. Except for the specification of copies of the two films previously purchased, the warrant did not purport to 'particularly describ[e] ... the ... things to be seized.' U.S. Const., Amdt. 4. Based on the conclusory statement of the police investigator that other similarly obscene materials would be found at the store, the warrant left it entirely to the discretion of the officials conducting the search to decide what items were likely obscene and to accomplish their seizure. The Fourth Amendment does not permit such action."

442 U.S. at 325, 99 S.Ct. at 2323–24 (citations omitted.) In *United States v. Leary*, 846 F.2d 592 (10th Cir.), the affidavit recited the attempted sale of a particular device. We held that a warrant that was limited by the requirement that the documents had to relate to the purchase, sale, and illegal exportation of materials in violation of the federal export laws provided no limitations at all. In holding that the warrant authorized a general search in conjunction with a federal crime and was overbroad on its face, we concluded that even if the reference to the federal statute was a limitation, it did not constitute a constitutionally adequate particularization of the items to be seized. Thus, we stated in *Leary*:

"While some federal statutes may be narrow enough to meet the fourth amendment's requirement, the two stat-utes cited by the Kleinberg warrant cover a broad range of activity and the reference to those statutes does not sufficiently limit the scope of the warrant." 846 F.2d at 601. Certainly, based on the affidavit, if this *Leary* warrant referencing two specific statutes is not particular enough, the warrant in this case, authorizing items which are reasonably believed to be "stolen", is overbroad. "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *Leary*, 846 F.2d at 602 (footnote omitted). As in *Leary*, the warrant here concerned does not provide such guidelines.

The warrant before us was a general warrant on its face, and with the officers' statement as to what they could do when on the premises, and with what they actually did, the warrant in its entirety was used as a general warrant. Its original nature was thereby confirmed. What the officers did and could do revealed the nature of the warrant in its entirety. What they did was to "search" using 10–12 officers for some 50–55 hours—apparently over two or three days (a later affidavit recites that the search terminated the night of January 31, 1991 at 2030 hours—it began January 29), brought in members of the public to assist, and turned over some items to them. The property listed as seized is typical of a general warrant as were the actions of the officers. It was almost identical with *Lo–Ji Sales, Inc.*

The most serious matter was that the warrant *expressly* authorized the officers themselves to determine probable cause after the search began. This was a true indicia of a general warrant. The search was a "rummaging," which the warrant permitted. The officers were illegally on the premises from the outset, and this also invalidated the later two warrants based on the original entry. Accordingly, I would suppress the evidence.