**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DONNELL FRANCIS TIMLEY,

Defendant-Appellant.

No. 08-3160
(D.Ct. No. 5:07-CR-40031-JAR-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **BALDOCK**, and **BRORBY**, Circuit Judges.


After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.


Appellant Donnell Francis Timley appeals his conviction for possession

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

with intent to distribute 67.5 net grams of cocaine base (or crack cocaine).[1]  He

alleges the district court erred in denying his motion to suppress evidence

obtained during a search of his home because the affidavit in support of the

search warrant failed to establish the probable cause necessary for such a warrant

and did not support seizure of certain items listed in the warrant – all in violation

of his Fourth Amendment right against unreasonable searches and seizures.  We

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Timley's

conviction.


## I.  Factual Background

In September 2006, Mr. Timley became the subject of a narcotics

investigation by the Shawnee County Sheriff's Office in Topeka, Kansas.  In

conjunction with that investigation, Deputy Bryan L. Clemmons executed an

affidavit in support of a search warrant of Mr. Timley's residence.  The affidavit

contained, in part, the following background information.


In September 2006, Deputy Clemmons, through a confidential informant,

made two controlled purchases of marijuana from someone known to the

---

[1]  Mr. Timley was indicted for possession with intent to distribute 74 gross grams of crack cocaine, but at the time of his plea hearing and sentencing the net weight to which he pled guilty and was sentenced was determined to be 67.5 grams.

informant as "Bebo." Later, after viewing a series of photographs matching his description, the informant positively identified Mr. Timley as the person from whom he made the controlled purchases.

During the first controlled purchase, on September 25, 2006, Mr. Timley exited a maroon Toyota Camry in the driveway of a house on the west side of Colorado and 29th Street in Topeka, where he met with the informant. Mr. Timley pulled two bags of marijuana from his coat pocket and gave them to the informant in exchange for $60. Mr. Timley also asked the informant if he was interested in buying ecstasy, which the informant declined to purchase at that time. A field test of the substance in the two bags tested positive for THC, or tetrahydrocannabinol,[2] and had a combined weight of 6.9 grams.

Prior to the next controlled purchase, the informant told Deputy Clemmons and others that Mr. Timley usually drove a green minivan. Thereafter, on September 29, 2006, authorities saw a green minivan with Kansas license tag "WDR 074" parked at the gas station where the informant was scheduled to meet Mr. Timley. Deputy Clemmons observed the informant enter the green minivan, heard him conversing with two individuals inside the vehicle, and then watched

---

[2] Tetrahydrocannabinol is "a compound found in cannabis or made synthetically that is the primary intoxicant in marijuana." *Webster's II New Riverside Univ. Dictionary*, 1197 (1984 ed.).

him exit the van and walk away. At that time, Mr. Timley sold the informant two bags of marijuana for $50 and again asked the informant if he was interested in buying ecstasy, which the informant declined but said he might try some cocaine in the future. The two bags again tested positive for THC and had a gross weight of 6.9 grams. On or about January 12, 2007, the informant positively identified Mr. Timley from a photograph.

Deputy Clemmons learned the green minivan at the scene of the second drug transaction was registered to Trelonda Brown, at 308 Scotland Avenue, Topeka. However, surveillance of Mr. Timley following the two controlled purchases of marijuana indicated he lived in a house at 528 S.E. 33rd Terrace in Topeka; parked at that house was the green minivan he used to conduct the second controlled purchase as well as a large, older-model automobile covered with a tan tarp parked in the back of the driveway.

Because the green minivan was registered to Trelonda Brown, at 308 Scotland Avenue, Deputy Clemmons also began conducting surveillance of the Scotland Avenue address on February 23, 2007; at that residence he began to notice the green minivan parked in the driveway as well as the large, older-model automobile covered with a tan tarp, which was parked in the back of that driveway. In addition, sometime after the beginning of the year, surveillance

showed the residence at the S.E. 33rd Terrace address had been vacated, which was confirmed by a Topeka police officer who had information Mr. Timley was now living at the Scotland Avenue address.

On March 22, 2007, Deputy Clemmons saw a black male matching Mr. Timley's description exit the Scotland Avenue residence and move the green minivan parked in the driveway onto the street and then enter a black vehicle, also parked in the driveway, and drive away. On March 30, 2007, which was the normal pick-up day for trash in the neighborhood, Deputy Clemmons took two large tied-up black plastic bags of garbage from the alley directly behind the Scotland Avenue residence. On examination of the contents of those bags, he found a bank statement addressed to "Trelonda Timley" at the Scotland Avenue address; a piece of paper with Mr. Timley's first name, "Donnell," written on it; several empty cigar boxes and wrappers; loose cigar tobacco mixed with marijuana stems and seeds; trace amounts of cocaine on a shirt; and thirty plastic baggies with the corners torn off, which indicated to Deputy Clemmons the packaging of illegal narcotics for distribution.

In addition to these facts, Deputy Clemmons averred in his affidavit that he was a certified law enforcement officer who possessed approximately seven years experience and hundreds of hours of professional law enforcement training in the

detection and investigation of criminal offenses.[3]  Based on his training and experience, Deputy Clemmons further stated he knew that individuals who use and sell illegal substances:  (1) commonly have firearms and other weapons in their possession used to protect and secure their property, drugs, and money; (2) frequently have in their possession paraphernalia required to conduct narcotics transactions, including scales, plastic baggies, pipes, and other smoking devices; (3) commonly discard their drug packaging and used materials in their personal trash receptacles; (4) often discard small amounts of marijuana in the form of seeds, stems, and burned marijuana cigarette butts; (5) make or use cigars to smoke marijuana using a "blunt," which is an unrolled cigar with the tobacco taken out of the middle and then refilled with marijuana; and (6) use small plastic baggies with the corners cut off as a means of narcotics packaging and/or discard small plastic baggies commonly used to package narcotics after cutting or tearing off their corners to remove cocaine, crack cocaine, methamphetamine, marijuana, and other drugs.

With respect to narcotics dealers, Deputy Clemmons stated they:  (1) are

---

[3]  As a narcotics officer, Deputy Clemmons stated he had participated in numerous investigations related to the possession and trafficking of controlled substances and that during those investigations, he:  (1) spent numerous hours conducting surveillance on narcotics-related activity; (2) purchased illegal drugs, both in an undercover capacity and through the use of informants during controlled purchases; and (3) interviewed those who sell, distribute, purchase, and use controlled substances.

known to use pagers and cellular phones to conduct their business; (2) often buy large amounts of narcotics, which they separate, weigh, and package at their residences and then sell from vehicles in order to deter law enforcement from access to their residences; and (3) often have: (a) records which reflect amounts of drugs sold and fronted and money owed and proceeds from drug sales; (b) records of names, phone numbers, and/or pager numbers of associates; and (c) books, receipts, notes, ledgers, money transfers and orders, computer disks, computer hard drives, and other papers related to their drug transactions. For the purpose of requesting a "no knock" search warrant, Deputy Clemmons recounted in his affidavit Mr. Timley's very extensive criminal history, including his convictions for murder and other violent felonies, as well as various exigent circumstances, such as his history of attempting to evade arrest by running from law enforcement, destroying and hiding evidence, and prior use or possession of weapons.

Following submission of Deputy Clemmons's affidavit, a state district judge issued a "no knock" search warrant for the premises at 308 Scotland Avenue, authorizing in separately numbered paragraphs the following items for seizure:

1. Cocaine

2. Marijuana

3. Ecstasy

4. Drug paraphernalia included but not limited to scales, packaging material, baggies, smoking pipes and any other means of injecting, inhaling or ingesting narcotics[]

5. Any documents, letters or records indicating computer hardware, i.e. hard drives computer files attached to and or on disks. Any security equipment i.e. cameras, monitors, and or warning devices, and firearms. Any documents letters or records indicating ownership of real estate, bank accounts, vehicles, firearms, weapons, and/or other property from residences and storage buildings.

R., Vol. 4 at D-1 to D-2. The warrant concluded there was "probable cause to believe that the above-described articles to be seized are located in or on the above described premises or person to be searched." *Id.* at D-2. Thereafter, Deputy Clemmons and others executed the search warrant at the Scotland Avenue address, where they encountered Mr. Timley, found 116.9 grams of marijuana and two digital scales in the residence, and also discovered, in the master bedroom, documents belonging to Mr. Timley and 74 gross grams, or 67.5 net grams, of a mixture containing cocaine base on top of a dresser.

Following his arrest, a grand jury indicted Mr. Timley on one count of possession with intent to distribute approximately 74 grams of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1), and one count of knowingly and intentionally possessing with intent to distribute approximately 114 grams of a mixture or substance containing a detectable quantity of

marijuana, also in violation of 21 U.S.C. § 841(a)(1). Thereafter, Mr. Timley filed a motion to suppress all evidence seized from his residence, alleging Deputy Clemmons's affidavit failed to establish probable cause necessary for the search warrant and seizure of certain items listed in the warrant, resulting in a violation of his Fourth Amendment rights.

Specifically, Mr. Timley claimed the affidavit: (1) was based on stale information because the controlled marijuana purchases occurred six months prior to the search warrant; (2) did not establish the required nexus between the crime and the place to be searched because the six-month-old controlled buys did not occur at the residence searched, officers believed he lived at a different residence than searched, and the trash seized could have included items from passersby going through the alley; (3) was based on evidence that Deputy Clemmons illegally collected from the trash without a warrant; and (4) did not support paragraph five of the warrant, which was overly broad, allowing seizure of computer hardware, security equipment, firearms, and documents indicating ownership of real estate, bank accounts, vehicles, firearms, and other property from residences and storage buildings.

After the government filed its response opposing Mr. Timley's motion to suppress, the district court held a hearing on the motion at which both parties

-9-

presented argument. Following the hearing, the district court issued an order and memorandum denying Mr. Timley's motion. With regard to the issue of staleness, it held the drug activity in question was ongoing and continuing, based on: (1) Mr. Timley's history of drug arrests and convictions dating from 1993 to 2006, when the controlled drug purchases occurred; and (2) the "trash pull," which revealed current ongoing drug dealings and abuse in the residence, as demonstrated by the thirty plastic baggies with the corners missing, known to be consistent with drug packaging. On the nexus issue, it found the affidavit sufficiently established a nexus between the objects seized and the place searched because the trash bags contained both evidence of drug packaging and the bank statement addressed to Mr. Timley's wife. It also discounted Mr. Timley's assertion passersby could have placed all of the incriminating evidence in those bags, noting the unlikelihood someone would have opened the trash bags and placed the incriminating items inside.

It also rejected Mr. Timley's contention the affidavit was based on impermissible evidence because Deputy Clemmons searched his trash for evidence of a crime, in violation of the Fourth Amendment. It found Deputy Clemmons's statements he took the trash on the normal pick-up day in the neighborhood and that it was taken from a receptacle in the alley behind the residence, rather from the curtilage of the home, sufficient to establish no Fourth

Amendment violation occurred. Finally, with regard to the particularity of the scope of the warrant and whether paragraph five was overly broad, the government conceded portions of the paragraph were overly broad and should be redacted, but that the balance of that paragraph and the rest of the warrant were valid. The district court agreed, determining the appropriate remedy was "to strike the offending paragraph," but the rest of the warrant remained valid. R., Vol. 1, Doc. 37 at 7-8.

Thereafter, Mr. Timley entered into a conditional plea agreement, pleading guilty to count one of the indictment charging him with possession of cocaine base but reserving his right to appeal the district court's denial of his motion to suppress. In turn, the government agreed to dismiss the remaining marijuana distribution count. Following a plea hearing, the district court accepted Mr. Timley's guilty plea and sentenced him to 240 months imprisonment and ten years supervised release. Mr. Timley does not appeal his sentence.

## II. Discussion

Mr. Timley now appeals the district court's denial of his motion to suppress evidence, raising essentially the same issues he raised before that court. In turn, the government continues to oppose Mr. Timley's arguments in support of his motion to suppress. In addressing Mr. Timley's issues on appeal, we first discuss

the legality of Deputy Clemmons's trash pull, on which much of our disposition of his appeal rests, and then consider our standard of review and the general legal principles involved with regard to search warrants.

The Supreme Court and this court have both held an individual has no reasonable expectation of privacy in items found in plastic garbage bags left on or at the side of a public street. *California v. Greenwood*, 486 U.S. 35, 40-41 (1988); *United States v. Long*, 176 F.3d 1304, 1307-09 (10th Cir. 1999). Thus, in making a determination as to whether an officer's conduct in taking garbage violates the Fourth Amendment, we consider whether the garbage bags "were within the curtilage of the home," and, if they are not, "then no Fourth Amendment violation occurred." *Long*, 176 F.3d at 1307. "Curtilage is the area to which extends the intimate activity associated with the sanctity of a ... home and the privacies of life." *Id.* at 1308 (quotation marks and citation omitted). Even if the garbage bags are within the curtilage of a home, we have held a defendant "must still show that he had a reasonable expectation of privacy in the trash bags" at issue. *Id.*

In this case, it is clear Deputy Clemmons obtained the two bags of trash at issue from the public alley directly behind the Scotland Avenue residence, rather than the curtilage of the home, and Mr. Timley has not otherwise argued or shown

-12-

he had a reasonable expectation of privacy in that trash. As a result, we discern no Fourth Amendment violation occurred in the collection of the evidence obtained therefrom, on which we hereafter rely in discussing Mr. Timley's arguments on appeal.

Next, regarding search warrants, under the Fourth Amendment probable cause is necessary for issuance of a search warrant and must be supported by a sufficient oath or affirmation. *See United States v. Mathis*, 357 F.3d 1200, 1203 (10th Cir. 2004). "In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and ensuring that the [judge] had a substantial basis for concluding that probable cause existed." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) (quotation marks and citation omitted). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Hence, "[p]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of such activity." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (quotation marks and citation omitted).

We generally "give considerable deference to a [judge's] determination of probable cause; a reviewing court's only duty is to ensure that the [court] had a substantial basis for concluding that probable cause existed." *Mathis*, 357 F.3d at 1205 (quotation marks and citation omitted). Thus, "[w]hen reviewing a district court's denial of a motion to suppress, this court accepts the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government." *Basham*, 268 F.3d at 1203. "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *United States v. Higgins*, 282 F.3d 1261, 1269 (10th Cir. 2002). While we consider an "informant's veracity, reliability, and basis of knowledge as relevant factors to evaluate," so is "a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched ...." *Mathis*, 357 F.3d at 1205. However, "the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances." *Basham*, 268 F.3d at 1203. With these principles in mind, we turn to Mr. Timley's specific issues raised on appeal

A. Staleness Issue

Mr. Timley asserts Deputy Clemmons's affidavit did not support a search

warrant because it contained stale information, based on the fact the two controlled sales of marijuana occurred six months before issuance of the search warrant. Mr. Timley suggests the district court's finding of continuous and ongoing drug activity ignores the fact that, other than the "trash pull," the most recent information in the affidavit was six months old. He also points out that nothing in the affidavit indicated any other contact occurred between him and the informant or law enforcement officers during that six-month period or that Mr. Timley was continuing to sell marijuana or ever sold drugs from the residence to be searched. The government agrees that without the evidence from the trash the affidavit contained stale information but contends evidence from the trash adequately established Mr. Timley's current involvement in drug dealing for the purpose of correcting any lingering staleness issues.

As Mr. Timley contends, an affidavit in support of a search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459-60 (10th Cir. 1990). "Probable cause existing at some time in the past will not suffice *unless* circumstances exist from which it may be inferred that the grounds [for probable cause] continued to the time the affidavit was filed." *United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974) (emphasis added). As a result, "otherwise stale information may be refreshed by more recent events," and

-15-

"[w]hen the circumstances suggest ongoing criminal activity, the passage of time recedes in importance." *United States v. Cantu*, 405 F.3d 1173, 1177-78 (10th Cir. 2005).

In this case, the trash obtained by Deputy Clemmons from the alley directly behind Mr. Timley's residence demonstrated ongoing drug-dealing activity and the presence of drugs, as evidenced by the items found inside, including loose cigar tobacco mixed with green marijuana stems and seeds, a shirt with cocaine on it, and the substantial number of plastic baggies with the corners torn away, indicating the packaging of illegal drugs for distribution. Inclusion of this information in Deputy Clemmons's affidavit sufficiently refreshed any stale information in support of a search warrant. This evidence, demonstrating ongoing criminal activity at the residence searched, is adequate to overcome Mr. Timley's staleness charge, regardless of whether any subsequent contact occurred between Mr. Timley and the informant or law enforcement officers or whether Deputy Clemmons's affidavit failed to explicitly allege Mr. Timley was continuing to sell marijuana or sold drugs from the residence to be searched.

### B. Nexus Issue

Mr. Timley alleges an insufficient nexus existed between the items listed in the warrant and the place searched because the two controlled buys occurred six

months prior to issuance of the warrant and officers determined he lived at a residence different from the one for which the warrant was issued. While Mr. Timley acknowledges the evidence found in the trash demonstrated possible evidence of criminal activity at the place searched, he points out that Deputy Clemmons's affidavit did not indicate whether the drug residue and paraphernalia were found in the same bag as the mail addressed to Mr. Timley's wife. He also suggests, as he did before the district court, that anyone driving or walking through the alley could have placed the trash in the location from which it was seized.

"Whether a sufficient nexus has been established between a defendant's suspected criminal activity and his residence ... depends [on] the facts of each case." *Biglow*, 562 F.3d at 1279. Thus, when reviewing an affidavit in support of a search warrant, we do not require "hard evidence or personal knowledge of illegal activity [to] link a Defendant's suspected unlawful activity to his home." *Id.* (quotation marks and citations omitted). "Instead, we have indicated that a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (quotation marks and citations omitted). Thus, "judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept" as well as inferences reasonably

drawn from the "evidence connecting a defendant's suspected activity to his residence ...." *Id.* at 1279-80 (quotation marks and citation omitted).

Applying these principles to the circumstances presented, it is apparent Mr. Timley's suspected activity involved the distribution of marijuana and other drugs, as demonstrated by the controlled purchases made six months earlier. Similarly, the trash in question obtained from the alley directly behind the Scotland Avenue residence contained evidence of suspected drug distribution, together with items connecting Mr. Timley with that residence, including mail addressed to his wife and a piece of paper containing his first name. Based on these circumstances, an inference could reasonably be drawn connecting Mr. Timley's suspected drug distribution activities to his residence.

Mr. Timley's argument no nexus existed because officers determined he lived at a residence different from the one searched grossly mischaracterizes Deputy Clemmons's affidavit. While Deputy Clemmons stated his original surveillance of Mr. Timley indicated he lived at 528 S.E. 33rd Terrace, he also clarified that subsequent surveillance established: (1) Mr. Timley's green minivan and older-model automobile had been transported to and parked at the Scotland Avenue residence; (2) he witnessed someone fitting Mr. Timley's description leave the Scotland Avenue house and move the green minivan; and (3)

-18-

the S.E. 33rd Terrace residence had been vacated, as confirmed by a Topeka police officer who had information Mr. Timley was presently living at the Scotland Avenue address at the time Deputy Clemmons submitted his affidavit.

Next, we can readily dismiss Mr. Timley's argument no nexus existed because the two controlled buys occurred six months prior to issuance of the warrant, given our previous determination evidence from the residence "trash pull" refreshed that conduct. We are also unpersuaded by Mr. Timley's contention no nexus existed because it is unclear whether the drug-related items were found in the same bag as the items indicating he maintained his residence there. While knowledge as to whether those items were found together in one bag, rather than in two separate bags, would have presented even stronger evidence of a nexus between the suspected activity and the place searched, the fact both bags were located together in the alley directly behind the residence to be searched is more than adequate to establish the requisite nexus for the purpose of issuing a search warrant, which, again, only requires inferences reasonably drawn from the "evidence connecting a defendant's suspected activity to his residence ...." *Biglow*, 562 F.3d at 1280-81.

Similarly, while it is possible a passerby could have placed the incriminating drug evidence in the two tied-up garbage bags in the alley directly

-19-

behind Mr. Timley's residence, Mr. Timley was suspected of marijuana and other drug distribution activities, and, correspondingly, the trash found in the alley directly behind his residence contained evidence of such drug distribution. Based on these circumstances, a reasonable or prudent person would believe a fair probability existed that the trash removed from those bags was likely connected with the home to be searched, rather than as a result of someone coincidentally discarding drug-related rubbish into Mr. Timley's tied garbage bags while passing through the same alley.

### C. Overbreadth or Particularity of Warrant Issue

Mr. Timley suggests, as he did before the district court, that paragraph five of the search warrant is overly broad because the affidavit did not support the seizure of computer hardware, security equipment, firearms, and documents indicating ownership of real estate, bank accounts, vehicles, firearms, and other property from residences and storage buildings. The government admits part of paragraph five is overly broad but only with respect to security equipment and "other property from residences and storage buildings." It suggests that once those portions of the paragraph are severed, the remainder of that paragraph, together with the rest of the warrant, is sufficiently particularized and supported by probable cause to support the seizure of the items taken as evidence from Mr. Timley's home. We agree.

To begin, "[t]he Fourth Amendment requires that warrants describe both the place to be searched and the things to be seized with particularity. The search should be confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993) (quotation marks and citations omitted). "The issue of whether a warrant is overbroad is subject to de novo review by this court." *Id.*

Under the severability doctrine, "the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant ...." *Id.* (quotation marks, citations, and alterations omitted). In determining if the severability doctrine is applicable, we "divide the warrant into individual phrases, clauses, paragraphs, or categories ...." *United States v. Sells*, 463 F.3d 1148, 1155 (10th Cir. 2006). If parts of a warrant may be "meaningfully severed" and its:

> valid portions make up the greater part of the warrant, then we sever those portions, suppress the evidence seized pursuant to the portions that fail to meet the Fourth Amendment's warrant requirement, and admit all evidence seized pursuant to the valid portions or lawfully seized during execution of the valid portions.

*Id.* at 1151. As a result, "[w]here ... each of the categories of items to be seized describes distinct subject matter in language not linked to language of other

categories, and each valid category retains its significance when isolated from [the] rest of the warrant, then the valid portions may be severed from the warrant." *Id.* at 1158 (relying, in part, on *Brown*, 984 F.2d at 1078 (holding that "[a]lthough one sentence in the warrant may have been overbroad, the infirm portion may be isolated and severed from the constitutionally adequate part")).

In this case, paragraph five of the search warrant may be meaningfully severed from the rest of the search warrant because the items sought therein, primarily pertaining to documents or records, are distinct from those in the rest of the search warrant, dealing with seizure of the actual physical drugs or drug paraphernalia. Similarly, portions of paragraph five may be severed because they are directed at different categories of items with little overlap, making them distinguishable from each other. For instance, while paragraph five primarily refers to documents or records, its subparts refer to items very distinct from one another, including firearms, computer equipment, and security equipment. Thus, while Deputy Clemmons's affidavit does not support seizure of security equipment or records regarding other residences and storage buildings, as the government admits, it did support a search for the other items to which paragraph five refers.

For example, paragraph five of the search warrant is directed not only at

documents regarding firearms but the search and seizure of firearms themselves. Correspondingly, Deputy Clemmons stated in his affidavit that individuals who use and sell illegal substances commonly have in their possession firearms and other weapons used to protect and secure their property, drugs, and money and that Mr. Timley had a history of prior use or possession of firearms. He also averred that narcotics dealers are known to possess records which reflect drug transaction information, including computer disks and computer hard drives. As a result, his affidavit supported the search and seizure of any firearms and documents or records in paragraph five pertaining to firearms or the listed computer items.

Deputy Clemmons's affidavit also provided information Mr. Timley resided at the Scotland Avenue residence, where its trash indicated ongoing drug-related activities, and that Mr. Timley drove a green minivan during at least one drug transaction, which he parked at the residence to be searched, and that narcotics dealers often transact drug sales from their vehicles. Thus, the affidavit sufficiently supported the search for and seizure of documents verifying his residence and ownership of the minivan, which were reasonably believed to be directly related to his suspected criminal activities. Finally, Deputy Clemmons avowed narcotics dealers often retain records reflecting amounts of drugs sold or fronted and proceeds from drug sales, so that documents relating to bank records,

as indicated in the search warrant, were amply covered by the affidavit. These valid portions of paragraph five, together with the other valid paragraphs of the search warrant, clearly make up the greater part of the warrant and support seizure of the items listed, including the drug scales, 114 grams of marijuana, and 67.5 net grams of crack cocaine discovered at Mr. Timley's residence, which are referred to in the constitutionally-valid paragraphs one, two, and four of the search warrant.

Applying our standard of review and the applicable legal principles to the circumstances presented and the issues raised on appeal, we conclude the district court did not err in denying Mr. Timley's motion to suppress the evidence obtained at his residence. Accordingly, the search warrant and affidavit in support thereof did not violate Mr. Timley's Fourth Amendment right against unreasonable searches and seizures.[4]

---

[4] A review of the cases cited by Mr. Timley in support of his arguments on appeal does not otherwise convince us the district court erred in denying his motion to suppress. We further note the cases cited in support of his staleness issue are especially unpersuasive as they are based on factual circumstances which differ from those presented here.

III.  Conclusion

For the reasons contained herein, we **AFFIRM** Mr. Timley's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge