

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT
# en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **WD78328** |
| | ) | **(Consolidated with WD78329)** |
| PHILLIP DOUGLASS, | ) | |
| | ) | **OPINION FILED:** |
| Respondent, | ) | **March 29, 2016** |
| and | ) | |
| | ) | |
| | ) | |
| JENNIFER M. GAULTER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert M. Schieber, Judge**

**Before:** Alok Ahuja, Chief Judge, Victor C. Howard,
Thomas H. Newton, Lisa White Hardwick, James Edward Welsh,
Mark D. Pfeiffer, Karen King Mitchell, Cynthia L. Martin, Gary D. Witt,
and Anthony Rex Gabbert, Judges, and Joseph M. Ellis, Senior Judge[1]

The State brings two interlocutory appeals, challenging the trial court's grant of

Respondents Phillip S. Douglass and Jennifer M. Gaulter's Motions to Suppress physical

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as Senior Judge.

evidence relating to charges of one count of second-degree burglary and one count of stealing that were brought against each of them. The physical evidence was acquired after the execution of a search warrant to search Douglass and Gaulter's home. Because the two appeals involve the same questions of law based on the same factual background, the cases have been consolidated.

In its first point, the State argues that the trial court erred in granting Respondents' Motions to Suppress because the search warrant was not unreasonable under the Fourth Amendment and article I, section 15, of the Missouri Constitution, and any invalid portion should have been redacted in that the search warrant could have been readily severed into parts and all parts were supported by probable cause except for one "minor" clause of the warrant. In its second point, the State argues that the trial court erred in suppressing all evidence seized because the application of the exclusionary rule was not warranted in that the detective's misconduct in preparing the warrant application was not the type of serious misconduct that should be deterred by the exclusion. Because the State's first point is dispositive, we do not reach the second point. We reverse the trial court's order of suppression and remand the matter for further proceedings consistent with this opinion.

**Background**

The material facts are not disputed. Following a search pursuant to a warrant for Douglass and Gaulter's home in Jackson County, Missouri, Respondents were charged with one count of second-degree burglary under § 569.170,[2] and one count of stealing of property valued between $500 and $25,000, under § 570.030.3(1). Douglass's and Gaulter's charges stem from allegations that they stole numerous items from Melissa Garris and are based on the following information set out in the warrant application:

---

[2] All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

2

On August 29, 2013, Detective Darold Estes, a twenty-year veteran of the Kansas City Police Department with fourteen years in the property crimes section, applied for the search warrant at issue in this case. In his application for a warrant, Detective Estes sought to search for and seize the following items:

- Coach Purse that is silver with C's on it, a Coach purse with purple beading, black Prada purse, larger Louis Vuitton bag;

- Toshiba Satellite laptop limited edition silver with black swirls on it;

- Vintage/costume jewelry, several engraved with MG;

- Coach, Lv, Hermes, Bestie Sunglasses;

- Passport and Social Security card for Garris;

- Social Security card and birth certificate for Garris's son;

- Various bottles of perfume, make-up brushes, and Clinique and Mary Kay make-up sets;

- Keys not belonging to property or vehicle at scene; and

- Any property readily and easily identifiable as stolen.

Detective Estes's affidavit in support of his application for the warrant stated that Garris had gone to Argosy Hotel room number 426 in Riverside to meet a friend, later identified as Gaulter, on August 21, 2013. Garris went to the room with Gaulter and Douglass. The three had drinks, but Gaulter felt she was being pressured into a three-way sex act and called her boyfriend, who picked her up.

The next day, Garris received a text from Gaulter saying that Garris had left a handbag in the hotel room and that Gaulter would leave it for her at the front desk. Garris said she would pick up the bag after she finished work. Garris received another text from Gaulter asking whether she was at home or at work. Garris replied that she was still at work and would call her when she got off of work. When she returned to her home, Gaulter observed that her apartment

had been broken into and approximately $10,000 worth of belongings, listed above, had been stolen. The door to the apartment had no damage. Garris called the Argosy Hotel and asked whether her bag, which contained her house keys, was still at the front desk. The hotel desk clerk informed her that her bag was still there. Garris asked staff at the hotel to look inside her bag for her keys, and she was told the keys were not in the bag. Garris began texting Gaulter about the theft and the missing keys, and Gaulter stopped replying.

Garris reported the incident to the police. She then drove to the hotel to retrieve her bag, but the hotel staff told her that the bag had been picked up. The police matched the phone number Garris had texted to a Blue Springs, Missouri address, and tax records supported that Douglass and Gaulter lived at the address. Garris identified the two from photographs. Garris told police that Douglass and Gaulter had possession of her keys, and no one else had access or permission to enter and remove her property. Hotel staff confirmed to Detective Estes that room number 426 had been rented to Douglass and Gaulter and that a bag had been left at the front desk for Garris.

Based on the affidavit and application, the warrant judge issued a search warrant authorizing a search of Douglass and Gaulter's residence. The search warrant described the items to be searched for and seized, listing the items Detective Estes described in the affidavit. The search warrant also listed five types of property, with a box next to each type of property to check if there was probable cause to search for the items. The five categories of property listed were:

- Property, article, material or substance that constitutes evidence of the commission of a crime;

- Property that has been stolen or acquired in any manner declared an offense;

- Property for which possession is an offense under the laws of this state;

4

- Any person for whom a valid felony arrest warrant is outstanding;

- Deceased human fetus or corpse, or part thereof.

The boxes next to all five types of property were checked.

Douglass and Gaulter both moved to suppress all the evidence seized under the authority of the warrant because there was no probable cause to search for "Deceased human fetus or corpse, or any part thereof."[3]

In its written response to the motions to suppress, the State argued that the box in question may have been checked because of a mere typographical error. At a consolidated hearing for both cases on the motions to suppress,[4] the State asked Detective Estes why the box was checked, and his answer indicated that the box was checked intentionally:

> A. Basically if we come across any of that during our investigation, you would require a piggyback warrant if you came across that to investigate it and kind of have to stop. Basically since it's there and we're already in there, if we came across it that tells the Judge that if we do come across it, we are going to initiate an action on this.
>
> Q. Are those things that if you come across it during the execution of a search warrant that you would investigate it anyway?
>
> A. That's correct.
>
> Q. And if they aren't marked on the search warrant that you are in the home for, you would then have to go out and get an additional search warrant?
>
> A. That's correct. You would have to stop then and get a piggyback warrant to go back and cover that option.
>
> Q. And so is that done for the purpose of if you run across those items, which are items that would require you to take action on anyway, that you can continue to do so instead of stopping the search and having to get an additional search warrant?

---

[3] Douglass and Gaulter also listed as additional bases for suppression that no receipt was left by law enforcement at the property searched and that the warrant was executed in violation of § 542.286 because Kansas City police officers executed the warrant in Blue Springs without the statutory authority to act. The trial court's Order suppressing the evidence did not address these arguments and they have not been raised on appeal.

[4] Douglass and Gaulter share the same defense counsel.

5

A.      That's correct.

Q.      Was that signed by Judge Powell?

A.      Yes, it was.

Q.      And on that search warrant, did Judge Powell make other corrections to the search warrant?

A.      Yes, he did.

Q.      But he did not make a correction to that?

A.      That's correct. . . .

Later, the following exchange occurred with defense counsel:

Q.      Did you have any probable cause to believe that there would be a human corpse present at the location you guys went to search?

A.      The probable cause was that what we were looking for were listed items. The actual human corpse is just an option on there that covers, like I said earlier, if we came across it, then we would actually investigate that.

Q.      Did you have any reason to believe you might come across a dead body or any parts thereof?

A.      No.

The trial court granted both Douglass's and Gaulter's motions to suppress, ruling the entire search warrant invalid. The trial court noted that Detective Estes acknowledged that he intentionally checked a box identifying that probable cause existed to search for a "deceased human fetus or corpse, or part thereof," knowing that to be a false statement, and that he "disingenuously failed to call the [issuing] Court's attention to the fact that he had checked that box." The trial court further found that the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), did not apply because Detective Estes could not reasonably be found to have been acting on an objective good-faith belief that the warrant was valid since it was his

6

own intentional action that rendered the warrant invalid. "In fact," the trial court wrote, "this is exactly the type of situation that the exclusionary rule was designed to deter: intentional police misconduct, malfeasance or negligence."[5] Additionally, the trial court determined that "it would be a miscarriage of justice to permit an officer to knowingly bypass the particularity requirement of a warrant by checking boxes that allow officers to search for items where no probable cause exists, thus, in essence rendering the search warrant a general search warrant, simply because it is an inconvenience to the officer to follow the U.S. Constitution, the Missouri Constitution and the laws of the state of Missouri."

Accordingly, the trial court suppressed all of the evidence seized as a result of the execution of the warrant. The State brings this interlocutory appeal.[6]

**Standard of Review**

"Where a trial court has granted a defendant's motion to suppress, we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Avent*, 432 S.W.3d 249, 252 (Mo. App. W.D. 2014) (internal quotations omitted). "'Review is limited to determining whether the decision is supported by substantial evidence.'" *Id*. (quoting *State v. Stover*, 388 S.W.3d 138, 149 (Mo. banc 2012)). "In making that determination, '[t]he facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded.'" *Id*. (quoting *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012)). This court defers to the circuit court's factual findings and credibility determinations. *Id*. In doing so, we recognize that the circuit court may believe all, some, or

---

[5] On appeal, the State does not argue that the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984) is applicable, but only that the trial court should have redacted the offending portion of the warrant and the exclusionary rule in this case would be too harsh to apply.
[6] "An appeal may be taken by the state through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in: . . . (3) Suppressing evidence . . . ." § 547.200.1(3).

7

none of any of the testimony presented, regardless of whether it is contradicted. *Id*. "'The weight of the evidence and the credibility of the witnesses are for the trial court's determination.'" *Id*. (quoting *State v. Kovach*, 839 S.W.2d 303, 307 (Mo. App. S.D. 1992)).

"Nonetheless, this court must consider the ruling in light of the proper application of the precepts of the Fourth Amendment. The ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews de novo." *State v. Stoebe*, 406 S.W.3d 509, 515 (Mo. App. W.D. 2013) (quoting *State v. Shaon*, 145 S.W.3d 499, 504 (Mo. App. W.D. 2004)). Further, whether the exclusionary rule should be applied is also a question of law to be reviewed de novo. *State v. Lucas*, 452 S.W.3d 641, 642 (Mo. App. W.D. 2014) (citing *State v. Ellis*, 355 S.W.3d 522, 523 (Mo. App. E.D. 2011)).

"While provisions of our state constitution may be interpreted to provide more expansive protections than comparable federal constitutional provisions, analysis of a section of the federal constitution is strongly persuasive in construing the like section of our state constitution." *State v. Johnson*, 354 S.W.3d 627, 632 (Mo. banc 2011) (citing *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006)). Our Supreme Court "has interpreted the protections of article I, section 15 of the Missouri Constitution to be coextensive with the protections guaranteed by the Fourth Amendment of the United States Constitution because both provisions provide the same guarantees against unreasonable searches and seizures." *Id*. (citing *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009)).

**Analysis**

## A. The Trial Court's Judgment

In suppressing all of the evidence seized under the warrant, the trial court determined that Detective Estes's act of intentionally checking a box, suggesting that probable cause existed to

8

search for a "deceased human fetus or corpse, or part thereof" (the corpse provision), "knowing that to be a false statement," rendered the entire warrant invalid under *Leon*.

The trial court further determined that the warrant, itself, failed to satisfy the particularity requirement of both the federal and the state constitutions, as well as § 542.276(4). The trial court stated:

> It would be a miscarriage of justice to permit an officer to knowingly bypass the particularity requirement of a warrant by checking boxes that allow officers to search for items where no probable cause exists, thus, in essence, rendering the search warrant a general search warrant, simply because it is an inconvenience to the officer to follow the U.S. Constitution, the Missouri Constitution and the laws in the state of Missouri.

To begin, the trial court erred in relying on *Leon* to declare the warrant invalid as a result of the inclusion of the corpse provision, because *Leon* does not address the validity of warrants. In *Leon*, the Court accepted the invalidity of the underlying warrant, and the sole issue for review was the appropriate *remedy* for the search conducted pursuant to that invalid warrant.[7] *Leon*, 468 U.S. at 906-07. Here, however, the only issue put forth in the suppression motion was the validity of the warrant authorizing the search. Specifically, Douglass and Gaulter argued that the warrant was invalid in its entirety because Detective Estes checked the box next to the corpse clause, even though there was no probable cause to believe that a "human fetus or corpse, or part thereof," would be found at their home. *Leon* simply did not address the question of the validity of a warrant only partially supported by probable cause. *Id*. Accordingly, *Leon* was irrelevant to the question put to the trial court, the validity of the warrant, and did not require that the warrant

---

[7] "Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Leon*, 468 U.S. at 906 (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). "Only the former question is currently before us . . . ." *Id*.

9

in this case be invalidated in its entirety.[8] *See, e.g., United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011) ("Because the warrant was valid, we need not consider whether the officers acted in good faith in relying on it."); *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) (applying severance doctrine despite rejecting application of *Leon* as a basis for upholding the entire search); *United States v. Nader*, 621 F. Supp. 1076, 1085 (D.D.C. 1985) (same).

We are left with the question of whether the trial court erred in suppressing all evidence seized when there was probable cause to search for some, but not all, of the items described in the warrant and where the officer preparing the warrant application intentionally included items for which he knew probable cause was lacking.

## B. The Severance Doctrine

"'From a policy perspective a rule requiring blanket invalidation of overbroad warrants would seem ill advised.'" *State v. Horsey*, 676 S.W.2d 847, 853 (Mo. App. S.D. 1984) (quoting *United States v. Riggs*, 690 F.2d 298, 301 (1st Cir. 1982)). There are two constitutional requirements for a valid warrant: (1) probable cause to believe that the place to be searched will contain contraband or evidence of a crime; and (2) particularity of the description of the place to be searched and items to be seized. U.S. Const. amend. IV; Mo. Const. art. I, § 15.

---

[8] Had the issue below been whether the officers could, in good faith, rely on the corpse provision of the warrant, then *Leon* would have applied. And we would have agreed with the trial court's conclusion that *Leon* could not save the search, given that *Leon* precludes officers from relying on "warrant[s] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). But, even "[i]f a court finds a clause to be 'so lacking of indicia of probable cause' that an officer could not reasonably rely on its validity, the clause should be stricken and the remaining portions upheld, provided that the warrant as a whole is not unsupported by probable cause." Rosemarie A. Lynskey, *A Middle Ground Approach to the Exclusionary Remedy: Reconciling the Redaction Doctrine with* United States v. Leon, 41 Vand. L. Rev. 811, 836 (1988).

There is no dispute that probable cause to support the corpse provision was lacking.[9] On the other hand, however, there is also no dispute that probable cause *did* exist to support a search for the other items identified in the warrant. Those items were described as:

> Coach Purse that is silver with C's on it, a Coach purse with purple beading, Prada purse black in color, larger Louis Vuitton bag

> Toshiba Satellite laptop limited edition silver with black swirls on it

> Vintage/costume jewelry several items had MG engraved on them

> Coach, Lv, Hermes, Bestie Sunglasses

> Passport and Social Security card (Melissa Garris)

> Social Security Card/Birth Certificate in son's name (Nikoli Lipp)

> Various bottles of perfume make-up brushes and Clinique and Mary Kay make-up sets

> Keys not belonging to property or vehicle at scene

> Any property readily and easily identifiable as stolen

And it is not disputed that the description of these items satisfied the particularity requirement. Thus, only *part* of the warrant—rather than the whole—was unconstitutional and therefore invalid.[10] When that is the case, a trial court faced with a motion to suppress must consider the severability doctrine.[11]

---

[9] To this end, the trial court's determination that the warrant failed the *particularity* requirement is somewhat perplexing. The lack of probable cause was obvious from the documents presented to the issuing judge, and the officer did nothing to attempt to conceal the obvious lack of probable cause to search for corpses from the issuing judge.

[10] It is important to emphasize that this appeal does not involve evidence seized pursuant to the warrant's corpse clause. Instead, this appeal concerns the suppression of evidence seized under the authority of the other, valid provisions of the warrant.

[11] "[T]he interests safeguarded by the Fourth Amendment have been adequately served by the suppression of *only* that evidence seized by overreaching the warrant's [lawful] authorization." *United States v. Christine*, 687 F.2d 749, 757 (3d Cir. 1982) (emphasis added). "[T]he practice of redaction is fully consistent with the Fourth Amendment and should be utilized to salvage partially invalid warrants." *Id*. at 750-51. "The cost of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression." *Id*. at 758.

"Under the severability doctrine, '[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during . . . execution [of the valid portions]).'" *United States v. Sells*, 463 F.3d 1148, 1150 (10th Cir. 2006) (quoting *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993)). Courts "apply a multiple-step analysis to determine whether severability is applicable." *Id.* at 1151. "First, . . . the warrant [is divided] in a commonsense, practical manner into individual clauses, portions, paragraphs, or categories." *Id.* Then, "the constitutionality of each individual part [is evaluated] to determine whether some portion of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment." *Id.* "If no part of the warrant particularly describes items to be seized for which there is probable cause, then severance does not apply, and all items seized by such a warrant should be suppressed." *Id.*

"If, however, at least a part of the warrant is sufficiently particularized and supported by probable cause, then [a court must] determine whether . . . the valid portions are distinguishable from the invalid portions." *Id.* "If the parts [can] be meaningfully severed, then [a court must] look to the warrant on its face to determine whether the valid portions make up 'the greater part of the warrant,' by examining both the quantitative and qualitative aspects of the valid portions relative to the invalid portion." *Id.* (quoting *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993)). "If the valid portions make up 'the greater part of the warrant,' then . . . those portions [are severed], [and] . . . the evidence seized pursuant to the portions that fail to meet the Fourth Amendment's warrant requirement [are suppressed], [but] . . . all evidence seized

12

pursuant to the valid portions or lawfully seized during execution of the valid portions [is admitted]." *Id*.

Here, the warrant can be easily divided into the following categories of evidence: (1) bags and purses; (2) Toshiba laptop; (3) costume jewelry; (4) sunglasses; (5) identification for Melissa Garris; (6) identification for Garris's son; (7) perfume and makeup related items; (8) keys unrelated to the scene; (9) any other property readily and easily identifiable as stolen; and (10) deceased human fetus or corpse, or part thereof.

Next, each part is examined for both probable cause and particularity. There has been no challenge to either the probable cause or particularity aspects of items (1)-(9). As noted above, however, there is no probable cause supporting item (10) (the corpse provision). Because at least some of the categories are supported by both probable cause and particularity, the next question is whether the valid portions (items (1)-(9)) are sufficiently distinguishable from the invalid portion (the corpse provision). The vast majority of items are clearly related to the theft crimes the defendants were accused of committing. Likewise, the corpse provision is clearly *un*related to any of the crimes the defendants allegedly committed. "Where, as here, each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from rest of the warrant, then the valid portions may be severed from the warrant." *Sells*, 463 F.3d at 1158. Accordingly, the valid portions are easily distinguishable from the lone invalid portion.

The next question is whether the valid portions make up the greater part of the warrant. If the invalid portions make up the greater part of the warrant such that the warrant is, in essence, a general warrant, then severance is inapplicable. "A general warrant is a warrant that authorizes 'a general exploratory rummaging in a person's belongings.'" *United States v. Christine*, 687

13

F.2d 749, 752 (3d Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

A warrant "cannot be invalidated as a general warrant [if] it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging . . . in search of criminal evidence." *Id*. at 753.

In conducting the "greater part of the warrant" analysis, we "focus[] on the warrant itself rather than upon an analysis of the items actually seized during the search."[12] *Sells*, 463 F.3d at 1159. "Certainly, the number of valid versus invalid provisions is one element in the analysis of which portion makes up the 'greater part of the warrant.'" *Id*. "However, merely counting parts, without any evaluation of the practical effect of those parts, is an improperly hypertechnical interpretation of the search authorized by the warrant." *Id*. at 1160 (internal quotations omitted). "A warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." *Id*. "Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant."[13] *Id*.

Here, both a quantitative and a qualitative assessment of the warrant indicate that, when viewed *in toto*, the valid portions made up the greater part of the warrant and that the corpse provision was a minor aspect of the warrant. In conducting the qualitative assessment,

> the court must assess the relative importance on the face of the warrant of the valid and invalid provisions, weigh the body of evidence that could have been seized pursuant to the invalid portions of the warrant against the body of evidence that could properly have been seized pursuant to the clauses that were sufficiently particularized, and consider such other factors as it deems appropriate in reaching

---

[12] "This is not to say that a search that grossly exceeds the scope of the warrant may not be suppressed in its entirety, but that is a separate inquiry . . . ." *United States v. Sells*, 463 F.3d 1148, 1159 (10th Cir. 2006). Here, Douglass and Gaulter have not claimed that the search exceeded the scope of the warrant.

[13] Consistent with the analysis described above, even before *Sells*, Missouri courts held that wholesale suppression was justified only "[i]f the overall tenor of the warrant or search smacks of a general warrant or an abuse of the prospective availability of redaction." *State v. Horsey*, 676 S.W.2d 847, 853 (Mo. App. S.D. 1984) (quoting *Christine*, 687 F.2d at 759).

14

a conclusion as to whether the valid portions comprise more than an insignificant or tangential part of the warrant.

*United States v. Galpin*, 720 F.3d 436, 450 (2d Cir. 2013). Moreover,

Where a warrant authorizes the search of a residence, the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry: an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection.

*Id.* at 447.

Here, the valid portions of the warrant authorized a rather broad search in light of the nature of the items listed (jewelry, keys, identification). Though certainly parts of a corpse might be small, a search for small parts of a corpse is unlikely to be broader than a search for small personal items like jewelry, keys, or identification. Accordingly, the corpse provision neither constituted the greater part of the warrant nor transformed the warrant into a general one.

In light of these conclusions, the trial court should have severed the valid portions of the warrant from the invalid portion (i.e., the corpse provision) and admitted evidence seized pursuant to the valid portion.[14] "'[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for

---

[14] When a criminal defendant files a motion to suppress, he "has the burden of establishing that his constitutional rights were violated by the challenged search or seizure; however[,] the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement . . . ." *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990) (internal citation omitted). But "[o]n a motion to suppress evidence seized under a warrant[,] the burden of proof is upon the defendant." *State v. Stevenson*, 589 S.W.2d 44, 47 (Mo. App. E.D. 1979). Here, because the search was pursuant to a warrant, Douglass and Gaulter bore the burden of proving the warrant invalid. And they met their burden with respect to the corpse provision. They failed, however, to demonstrate that the entire warrant was invalid. Had the court properly severed the warrant, Douglass and Gaulter might have argued that evidence was seized pursuant to the invalid portion of the warrant, in which case the State would have borne the burden of demonstrating that the evidence sought to be admitted was seized pursuant to only the valid portion of the warrant. However, because the trial court erroneously found the warrant invalid in its entirety, no such argument was made. And, at oral argument, Douglass and Gaulter appeared to concede that none of the evidence sought to be suppressed had been seized under the invalid portion of the warrant.

15

other items as well.'" *United States v. Cook*, 657 F.2d 730, 735 (5th Cir. 1981) (quoting 2 W. LaFave, *Search and Seizure*: A Treatise on the Fourth Amendment § 4.6(f) (1978)).

## C. Officer Misconduct

The general tenor of the court's judgment, and the crux of Douglass and Gaulter's argument on appeal, is that Detective Estes's misconduct in including the corpse provision, knowing that there was no probable cause to support it, required invalidation of the entire warrant. There are two problems with this determination: (1) the severance/redaction cases are not concerned with the officer's motivation in procuring the warrant; and (2) invalidation of the entire warrant under these circumstances would be inconsistent with our approaches to dealing with officer misconduct in other warrant cases.

To begin, none of the severability doctrine cases discuss what role, if any, officer misconduct plays in the analysis. Instead, the courts have examined only the warrant and accompanying affidavit to discern whether the warrant met the constitutional requirements of probable cause and particularity or whether it appeared to be a general warrant. *See, e.g., Sells*, 463 F.3d at 1159 ("The 'greater part of the warrant' analysis focuses on the warrant itself rather than upon an analysis of the items actually seized during the search."); *Christine*, 687 F.2d at 759-60 (noting that redaction was available to the court based solely upon a review of the warrant and affidavit); *see also* 2 LaFave, *Search and Seizure*, § 3.7(d) (4th ed. 2004) ("If severability is proper (there may be instances in which it is not), it would seem the rule would be more sensible if expressed *not in terms of what was seized*, but rather in terms of what search and seizure would have been permissible if the warrant had only named those items as to which probable cause was established.").

Despite some courts using the terms "pretext" and "bad faith," in describing when severance is inapplicable,[15] the courts were doing nothing more than employing the "greater part of the warrant" analysis. "[A]lthough articulated in varying forms, every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion." *Sells*, 463 F.3d at 1158. In deciding whether to apply the severance doctrine, courts are generally not concerned with *why* parts of a warrant are invalid, only *if* they are. And to the extent that officer misconduct is relevant at all in the severance doctrine cases, the issue is subsumed within the "greater part of the warrant" analysis; if the invalid portions make up a "greater part of the warrant," resulting in a broader search than would otherwise have been authorized, the severability doctrine is inapplicable because the warrant has then been transformed into a prohibited general one. *See Sells*, 463 F.3d at 1159 (characterizing language from *Aday v. Superior Court*, 362 P.2d 47, 52 (Cal. 1961), wherein the California supreme court "recognize[d] the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirements of particularity" and condemned "[s]uch an abuse of the warrant procedure," as an articulation of the "greater part of the warrant" analysis). While the severance doctrine presents the danger that:

> [t]he police might be tempted to frame warrants in general terms, adding a few specific clauses in the hope that under the protection of those clauses they could engage in general rummaging through the premises and then contend that any incriminating evidence they recovered was found in plain view during the search for the particularly-described items, . . . careful administration of the rule will afford full protection to individual rights.

---

[15] *See, e.g., United States v. Fitzgerald*, 724 F.2d 633, 636-37 (8th Cir. 1983) ("[A]bsent a showing of pretext or bad faith on the part of the police or the prosecution, the invalidity of part of a search warrant does not require the suppression of all the evidence seized during its execution."); *United States v. Cook*, 657 F.2d 730, 735 n.6 (5th Cir. 1981) (noting the absence of pretext to negate application of the severance doctrine).

*United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983).  In short, the courts have not been concerned with *why* the invalid portions might have been included because, simply put, if invalid provisions rendered the warrant, as a whole, a general warrant, the entire warrant will be deemed invalid, and the severance doctrine will be inapplicable.

The second problem with wholesale suppression in this context is that it would be inconsistent with other case law dealing with officer misconduct in either procuring or executing a warrant.  In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the United States Supreme Court addressed the remedy for officer misconduct in the procurement of a warrant, either through intentional misrepresentation or intentional omissions in the supporting affidavit.  But, even where an officer intentionally makes factual misrepresentations to the warrant-issuing judge, the remedy is not automatic, wholesale suppression.  Rather, a court must "set to one side" the "material that is the subject of the alleged falsity or reckless disregard," and determine whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause."  *Id*. at 171-72.  In other words, upon a finding that the affiant officer lied to the warrant-issuing judge, the remedy the court must apply is to *redact* the misrepresentation and then reevaluate whether the warrant is still supported by probable cause.

Similarly, if officers engage in misconduct when executing a warrant by exceeding its lawful scope, the remedy is not wholesale suppression of all evidence seized.  Rather, when

> law enforcement officers, acting pursuant to a valid warrant, seize an article whose seizure was not authorized and which does not fall within an exception to the warrant requirement[,] . . . [w]ithout exception[,] federal appellate courts have held that only that evidence which was seized illegally must be suppressed; the evidence seized pursuant to the warrant has always been admitted.

*Christine*, 687 F.2d at 757.  In other words, courts exclude only that evidence seized as a result of misconduct and not any evidence seized under lawful authority.

18

We see no reason why wholesale suppression is the appropriate remedy for a misrepresentation on the face of the warrant application (here, the checking of a box identifying items to be searched for, for which there was not probable cause set out in the affidavit) when such a remedy has been rejected when addressing intentional misrepresentations in the supporting affidavit, or a search that intentionally exceeds the lawful scope of the warrant. *See* Rosemarie A. Lynskey, *A Middle Ground Approach to the Exclusionary Remedy: Reconciling the Redaction Doctrine with* United States v. Leon, 41 Vand. L. Rev. 811, 837 (1988) ("redaction still would be appropriate to excise only those clauses authorized pursuant to the misinformation, provided that the warrant generally is based on truth.").

This is not to say that Detective Estes's conduct here was excusable or justifiable.[16] To be sure, there is no "law enforcement convenience" exception to the warrant requirement, and to the extent checking boxes that are unsupported by probable cause is a routine practice in Detective Estes's jurisdiction, it must be discontinued. Indeed, "[t]he Fourth Amendment dictates that a magistrate may not issue a warrant authorizing a search and seizure which exceeds the ambit of the probable cause showing made to him." *Christine*, 687 F.2d at 753. In short, there is simply no justification for including items in a warrant application when the applicant knows there is no probable cause to support them. And, in doing so, law enforcement not only gains nothing (because, even if the warrant is severed, any evidence seized pursuant to the invalid portion of the warrant will be suppressed) but also risks the possibility that inclusion of such items could transform the warrant into a prohibited general warrant, resulting in suppression

---

[16] As mentioned earlier, Detective Estes testified that the purpose of checking the corpse provision box was essentially for the convenience of avoiding the need to halt the search and obtain a second "piggyback" warrant in the event that they came across any "[d]eceased human fetus or corpse, or part thereof," during their authorized search for stolen items.

of *all* evidence seized under it. We strongly advise law enforcement officers not to engage in this practice.

In light of the trial court's errors, its order of suppression must be reversed and the matter remanded for further proceedings. The circuit court was authorized to suppress only evidence that was actually seized in reliance on the corpse provision. And unless the officers conducting the search actually relied on the invalid portion of the warrant in doing so, the warrant—in the absence of redaction—created merely the potential for a Fourth Amendment violation. The Supreme Court has "never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment." *United States v. Karo*, 468 U.S. 705, 712 (1984). "If[,] at the time of the seizure, the executing officers were not intruding upon the individual's expectation of privacy more than was necessary to execute the valid portion of the warrant, the Fourth Amendment does not require suppression" of evidence obtained in reliance on the valid portions of the warrant. *People v. Brown*, 749 N.E.2d 170, 176 (N.Y. 2001).

Because only actual invasions of privacy constitute a Fourth Amendment violation, if the officers' search was limited to only those items identified in the warrant that were supported by probable cause—and the officers did not rely upon the authority granted by the improperly checked box—then the defendants' privacy was not invaded and no Fourth Amendment violation occurred. Accordingly, on remand, the court must determine whether any evidence was seized in reliance on the invalid portions of the warrant.

## Conclusion

The trial court's judgment suppressing the State's evidence is reversed, and the matter is remanded for further proceedings consistent with this opinion.

_Karen King Mitchell_
Karen King Mitchell, Judge

Alok Ahuja, Chief Judge, and Victor C. Howard, Lisa White Hardwick, James Edward Welsh, and Cynthia L. Martin, Judges, concur.

Gary D. Witt, Judge, dissents in separate opinion in which Thomas H. Newton and Anthony Rex Gabbert, Judges, and Joseph M. Ellis, Senior Judge, concur.

Mark D. Pfeiffer, Judge, dissents in separate opinion in which Thomas H. Newton, Judge, and Joseph M. Ellis, Senior Judge, concur.



| STATE OF MISSOURI, | ) | |
|---|---|---|
| | ) | |
| **Appellant,** | ) | **WD78328 Consolidated with** |
| | ) | **WD78329** |
| v. | ) | |
| | ) | **OPINION FILED: March 29, 2016** |
| **PHILLIP DOUGLASS,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **JENNIFER M. GAULTER,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## DISSENTING OPINION

I respectfully dissent. The majority's application of the severance doctrine under the circumstances of this case severely undermines the protection of the citizens of the State of Missouri from unreasonable searches and seizures and severely curtails the ability of trial judges to properly sanction police misconduct. For the reasons explained below, I would find that the trial court appropriately excluded all the evidence seized pursuant to the defective warrant. Where law enforcement deliberately acts in bad faith to undermine the protections of the Fourth Amendment by including items in a search warrant for which they know there is no probable cause to search, I would find that the severance doctrine is inapplicable and the relevant question is whether the application of

the exclusionary rule is warranted under the particular facts of the case. This would strike an appropriate balance between the interests of law enforcement and the protections of the Fourth Amendment by allowing trial courts to appropriately sanction egregious or systematic police misconduct.

The facts of this case are straightforward. Detective Estes, a twenty-year veteran of the Kansas City Police Department, applied for a warrant and indicated, intentionally and in bad faith, that law enforcement had probable cause to support and the authority to search for "[d]eceased human fetus or corpse, or part thereof" (the "corpse clause") in the home shared by the Respondents. The warrant was then approved by a judge. Detective Estes knew he did not have probable cause to support the corpse clause but decided to include it anyway for the sake of convenience, presumably hoping it would go unnoticed by the judge approving the warrant. Law enforcement then executed the warrant, which on its face indicated that police had the authority to rummage through the home of respondents looking for, among other things, bodies and body parts.[1] Law enforcement, unsurprisingly, did not find any body parts in the Respondents' home but did find the allegedly stolen items for which they had probable cause to search.

I agree with the majority opinion insofar as it concludes that the trial court's application of *United States v. Leon*[2] was misplaced. However, I disagree with the majority's conclusion that the severance doctrine *must* be used here to salvage this warrant because the severance/redaction cases are unconcerned with the officer's

---

[1] Body parts would include blood, fluids and tissues some of which may not be visible to the naked eye and may require chemical and/or laboratory testing to even determine their presence. These may be located within the fibers of the carpet, furniture or within the sink, bathtub or floor drains.

[2] 468 U.S. 897 (1984).

subjective intent in procuring the defective warrant. In order to understand why bad faith and intentional misconduct by law enforcement forecloses the application of the severance doctrine, it is necessary to take a broader look at the purposes of the Fourth Amendment and the development of the severance doctrine.

## A.    The Fourth Amendment and Exclusionary Rule

The Fourth Amendment to the United States Constitution was adopted in response to the indiscriminate searches conducted by the Crown in the colonies through the use of writs of assistance, what we would now call general warrants. *United States v. Christine*, 687 F.2d 749, 755 (3rd Cir. 1982). "Writs of assistance were issued upon 'mere suspicion' and gave customs officials blanket authority to search where they pleased for goods imported in violation of British tax laws." *Id*.; *see also Boyd v. United States*, 116 U.S. 616, 625 (1886). The effect of the use of these writs was that the colonists were under the control of the police without judicial supervision. *Christine*, 687 F.2d at 756. "In the eloquent and oft-quoted words of James Otis, the writs placed 'the liberty of every man in the hands of every petty officer.'" *Id*. (quoting *Boyd*, 116 U.S. at 625).

"The Fourth Amendment to the United States Constitution ensures the rights of citizens to be free from unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation." *State v. Robinson*, 454 S.W.3d 428, 437 (Mo. App. W.D. 2015); *see also* U.S. CONST. amend. IV ("[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized.")[3]   "The Missouri Constitution provides coextensive protection." *Robinson*, 454 S.W.3d at 437 (citing MO. CONST. art. I, § 15); *see also State v. Baker*, 103 S.W.3d 711, 717‑18 (Mo. banc 2003). Fourth Amendment protection also includes the "right to be notified by law enforcement officials of their purpose and authority prior to entering a dwelling." *Robinson*, 454 S.W.3d at 437 (quoting *Baker*, 103 S.W.3d at 718).  These provisions strike a balance between liberty from governmental intrusion and the need for police to perform their proper role in investigating criminal activity.

Although an individual whose Fourth Amendment rights have been abridged may seek civil damages, courts have found this remedy is often insufficient to deter police overreaching.  *Christine*, 687 F.2d at 757.  In order to enforce the protections of the Fourth Amendment and deter police misconduct, "[t]he normal rule is that 'all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in state court.'"  *State v. Grayson*, 336 S.W.3d 138, 146 (Mo. banc 2011) (quoting *Mapp*, 367 U.S. at 655).  Exceptions to the exclusionary rule have been created where the results of the rule would not serve its purposes; for example, where police rely in good faith on a facially valid warrant.  *See United States v. Leon*, 468 U.S. 897, 922 (1984) (establishing the good-faith exception); *State v. Sweeney*, 701 S.W.2d 420, 426 (Mo. banc 1985) (adopting in Missouri the good-faith exception to the exclusionary rule).  Indeed, in recent years, the United States Supreme Court has reflected these developments by re-

---

[3] The Fourth Amendment is made applicable to state actors via the Fourteenth Amendment's Due Process Clause.  *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

4

characterizing the exclusionary rule as only applicable to situations in which police practices are "deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system." *State v. Johnson*, 354 S.W.3d 627, 633 (Mo. banc 2011) (quoting *Davis v. United States*, 131 S. Ct. 2419, 2428 (2011)).

**B.    The Severance Doctrine**

In certain limited cases, where a discrete and minor part of a warrant is found to be invalid for either lacking particularity or lacking probable cause but the remainder of the warrant passes constitutional scrutiny, courts have found that the application of the exclusionary rule may be too harsh.  Accordingly, a number of courts have held that in such circumstances it may be appropriate to redact severable portions of a warrant, unsupported by probable cause, and to exclude from trial only those items seized for which there was no probable cause to search.  Courts have referred to this doctrine as the severance doctrine.  *See e.g., United States v. Galpin*, 720 F.3d 436, 448 (2d Cir. 2013).[4] To apply the severance doctrine, the court must first decide whether a warrant is severable.  A warrant is severable where "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *United States v. Sells*, 463 F.3d 1148, 1155 (10th Cir. 2006) (quoting *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993)).  "When a warrant is severable, the portion of the warrant that is 'constitutionally infirm ...− usually for lack of particularity or probable cause−is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be

---

[4] This doctrine has been referred to both as the "severability doctrine", "the severance doctrine" and the "redaction doctrine", but the terms are interchangeable.

admitted.'" *Galpin*, 720 F.3d at 448 (citing *United States v. George*, 975 F.2d 72, 79 (2d Cir. 1992)). The justification for use of severance has been explained as follows:

> The severance doctrine is animated by the need to balance the considerable social costs of suppressing evidence of guilt against the need to deter police misconduct, and the judgment that it would be unduly "harsh medicine" to suppress evidence whose seizure was authorized by a particularized portion of a warrant simply because other portions of the warrant failed that requirement.

*Id*. (citing 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.6(f) (5th ed. 2012)). A number of courts have adopted this approach. *See, e.g., Sells*, 463 F.3d at 1154-55; *Christine*, 687 F.2d at 754; *United States v. Moetamedi*, 46 F.3d 225, 230 (2d Cir. 1995); *United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993); *United States v. Fitzgerald*, 724 F.2d 633, 636-37 (8th Cir. 1984); *United States v. Cook*, 657 F.2d 730, 735 (5th Cir. 1981); *Norris v. State*, 640 P.2d 1374, 1376 (Okla. Crim. App. 1982); *State v. Higgs*, 311 P.3d 1266, 1274-75 (Wash. Ct. App. 2013); *Aday v. Superior Court of Alameda Cty.*, 55 Cal.2d 789, 797 (Cal. 1961).

In *State v. Horsey*, the Southern District of this Court also adopted the severance doctrine and is to date the only application of the doctrine in Missouri. 676 S.W.2d 847 (Mo. App. S.D. 1984). In *Horsey*, the defendant was tried and convicted with evidence obtained by the issuance of a warrant that defendant claimed was excessive in scope. *Id.* at 852. The search warrant at issue included the authority to search two separate addresses, and the defendant claimed there was no probable cause to search one of those addresses. *Id*. The Court decided that even if the affidavit in support of the warrant did not support probable cause for one of the addresses, the warrant was not invalid *in toto*,

6

due to the severability doctrine. *Id*. at 852-53. The warrant could be redacted to disregard the property for which there was no probable cause to search, and the items found at the property for which there was probable cause to search could come in at trial. *Id*. at 853. The Court in *Horsey* agreed with the Third Circuit's opinion in *U.S. v. Christine*, which found that the practice of redaction is consistent with the Fourth Amendment and should be used to salvage partially invalid warrants. *Id*. (citing *Christine*, 687 F.2d at 750-51).

In *Christine*, the Third Circuit undertook a thorough analysis of the functions of the Fourth Amendment's Warrant Clause and considered whether redaction of invalid sections of a warrant would undermine the purposes of that clause. 687 F.2d at 756. The Third Circuit identified five purposes served by the Warrant Clause. *Id*. First, the Warrant Clause protects citizens from unreasonable interferences with privacy by requiring that warrants be justified by an antecedent showing of probable cause. *Id*. Second, the Warrant Clause protects the privacy of individuals from being infringed by law enforcement, which is engaged in a competitive enterprise to ferret out crime, by requiring a neutral and objective judicial officer to weigh the need to invade privacy against the interest of law enforcement. *Id*. Third, the warrant's terms limit the intrusion to the individual searched by requiring that the things seized be described with particularity, thereby preventing general searches. *Id*. Fourth, the warrant informs the subject of the search of the authority of the officer, the need to search, and the limits of his power to search. *Id*. Fifth, the procedures to apply for and issue a warrant create a record that is susceptible to later judicial review. *Id*. at 756-57. The Third Circuit

concluded that redaction of a warrant containing invalid severable phrases or clauses is, under certain circumstances, consistent with the purposes of the Warrant Clause. *Id*. at 758.

### 1. The Limits of the Severance Doctrine

The severance doctrine was developed because previous courts determined that, in certain instances, the exclusion of all evidence found pursuant to a partially defective warrant was not justified. Given that the exclusionary rule's primary purpose is to sanction police misconduct, in cases where a warrant is partially defective for more benign reasons, excluding all the evidence under the warrant may not be justified. However, where police misconduct and bad faith are the very reason why the warrant needs be severed, the doctrine cannot and must not be allowed to protect police or prosecutors from their own misconduct.

The majority opinion argues that the severance/redaction cases are not generally concerned with the officer's motivation in procuring the warrant, thereby rendering the subjective intent of the officer committing the misconduct inconsequential. However, ***the majority has not cited one case that has applied the severance doctrine where the trial court explicitly found that intentional police misconduct was the reason the warrant was invalid.*** Even though the majority recognizes language from multiple cases explicitly stating that "pretext" and "bad faith" would make the severance doctrine *inapplicable*, the majority finds that the language does not mean what it usually means but rather only invokes the "greater part of the warrant" analysis. Accordingly, to the majority, bad faith and pretext on the part of state actors, including law enforcement or

prosecutors, is only relevant insofar as it affects whether the invalid portions make up a "greater part of the warrant." In essence, the majority would find that pretext and bad faith by state actors has little or no effect on the analysis.

I would hold that a prerequisite for the use of the severance doctrine must be the absence of pretext or bad faith by the police and the prosecution. Although the federal cases (and one Missouri case) applying the severance doctrine have not fully explored what "bad faith" and "pretext" mean in the context of the severance doctrine, that does not make those words meaningless. The cases repeatedly state that the severance doctrine is *inappropriate* where bad faith or pretext is present. *See Horsey*, 676 S.W.2d at 853 ("[i]f the overall tenor of the warrant or search smacks of a general warrant *or an abuse of the prospective availability of redaction*, then the entire search and seizure may be treated as a single illegality" (emphasis added); *see Fitzgerald*, 724 F.2d at 636-37 (holding that absent a showing of pretext or bad faith on the part of the police or prosecution, the invalidity of part of a search warrant does not require suppression of all the evidence seized during its execution); *see also Cook*, 657 F.2d at 735 n.6 (adopting severance and specifying this case was not a situation where the faulty warrant was the result of pretext by police); *United States v. Freeman*, 685 F.2d 942, 952-53 (5th Cir. 1982) (stating that use of severance to work an abuse of the warrant procedure could not be tolerated); *Sells*, 463 F.3d at 1162 ("Here, the district court found no 'indiscriminate rummaging or hours of ransacking.' Nothing in the record suggests that this finding is clearly erroneous; *nor does the record suggest that any of the officers' actions constituted the sort of 'flagrant disregard' for the Fourth Amendment* or the permissible scope,

9

duration, and intensity of the search under the redacted warrant that would require the 'extreme remedy' of total suppression.") (emphasis added) (internal citation omitted).

The Fourth Amendment can only offer protection insofar as individuals, vested with the authority of the State, exercise their authority in good faith and in accordance with the procedures required by the Warrant Clause. The absence of bad faith or pretext is necessary before redaction may be considered, as ignoring bad faith by the police or prosecution would undermine many of the purposes of the Warrant Clause as identified by *Christine*.

For example, the first purpose of the Warrant Clause, identified in *Christine*, is the protection of citizens from unreasonable interference with privacy by requiring that warrants be justified by an antecedent showing of probable cause. 687 F.2d at 756. An officer who intentionally submits a false statement to the judge issuing a warrant or indicates he has probable causes to search for items for which he knows there is no probable cause completely undermines this pillar of protection. Redaction of the offending provision does not negate the unreasonable interference by the State where such interference is premised on or expanded by an intentionally false statement under oath or other malfeasance.

The second purpose identified is the protection of privacy from police overreach by requiring a neutral and objective judicial officer to serve as an intermediary. *Id*. A neutral intermediary must have reasonable confidence that the affiant is, to the best of his knowledge, telling the truth. This is especially the case where the affiant is a member of law enforcement. As the Missouri Supreme Court has noted, "courts have consistently

10

held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination." *State v. Baker*, 103 S.W.3d 711, 720‑21 (Mo. banc 2003) (quoting *State v. Williams*, 9 S.W.3d 3, 16 (Mo. App. W.D. 1999)). Deliberate deception undermines the ability of the neutral arbiter to make an informed decision. Redaction after the fact is no remedy, as the damage has already been achieved.

The third purpose of the clause is to limit the intrusion by police by requiring things to be seized to be described with particularity. *Christine*, 687 F.2d at 756. Of course, if an officer is allowed to intentionally include items for which he knows are not supported by probable cause, there is no limit to the intrusion - just the limit of the officer's imagination. After the fact redaction does nothing to limit the intrusion.

The fourth purpose of the Warrant Clause is to inform the subject of the search of the authority of the officer and limits of his power. *Id.* However, if items are included in the warrant beyond the power of the officer to search, because they are not supported by probable cause, then the notification is meaningless and there can be no confidence in the warrant. Again, post-hoc redaction does not protect these interests where the police have undermined the protections of the Fourth Amendment in bad faith.

Contrary to the majority's view, the severance doctrine is not just limited by whether the contents of the warrant pass constitutional muster as being sufficiently particular (i.e. not a general warrant) but also by whether in the circumstances of the case the application of the doctrine would encourage *abuse* based upon the prospect of

11

redaction. Whether a practice is designed to abuse or take advantage of the prospect of redaction requires a subjective determination of the intent of the state actor involved.[5]

## B. The Exclusionary Rule Strikes the Appropriate Balance

The majority opinion curtails the ability of trial courts to use the exclusionary rule to sanction abusive police practices. The majority opinion recognizes that the conduct in this case was neither excusable nor justifiable and states that it must be discontinued. However, the only circumstance in which the majority would allow the trial court to sanction the egregious and likely systematic behavior of the Kansas City Police Department in this case is when the invalid portions of the warrant create a "general warrant." As explained by the majority opinion, whether a warrant has become a "general warrant" depends on whether the warrant "authorizes 'a general exploratory rummaging in a person's belongings.'" *Christine*, 687 F.2d at 752 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Further, a warrant "cannot be invalidated as

---

[5] The majority also suggests that wholesale suppression of evidence here where bad faith has been demonstrated by law enforcement would be improper because wholesale suppression is not required where an intentional misrepresentation is made in an affidavit supporting probable cause to procure a warrant. The majority relies on *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) in its comparison, but the analogy is misplaced. *Franks* considered whether a defendant has the right under the Fourth and Fourteenth Amendments to challenge the truthfulness of statements made in an affidavit supporting a warrant. *Id*. at 155. The Supreme Court held that where the defendant can specifically allege deliberate falsehood or reckless disregard for the truth in the affidavit, and can support those allegations with affidavits or other sworn statements, the court should set the challenged statements aside. *Id*. at 171-72. If, after setting those statements aside, there remains sufficient content in the warrant to support the finding of probable cause, no hearing regarding the allegations is required. *Id*. But, if the remaining content is insufficient to support probable, then the defendant is entitled to a hearing. *Id*. at 172. At that hearing, if the defendant can establish "by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded from the trial to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 155.

*Franks* does not address the issue before this court. Under *Franks*, if the court finds that the falsehood was necessary for finding probable cause, the warrant is voided and the fruits of the search must be excluded. Here, there is no question regarding whether there was probable cause with respect to the corpse clause. There was not. Therefore, the question becomes one of severability. *Franks* does not stand for the proposition that the court can disregard a part of a warrant unsupported by probable cause so long as probable cause exists for whatever other items have not been excised.

12

a general warrant [if] it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging . . . in search of criminal evidence." *Id*. at 753. Therefore, according to the majority, the only way a trial court can sanction the abusive practices in this case (the intentional and arbitrary inclusion of additional categories of items in a search warrant for which there is no probable cause to search) would be if it resulted in "unbridled discretion" on the part of law enforcement. Accordingly, the risk of sanction faced by law enforcement for these abusive practices is distressingly small. Under the majority's analysis, I see little, if any, incentive for this officer or this department to depart from the practice of checking the corpse clause box on every warrant.[6]

One of the concerns expressed by the majority is the apparent harshness of the sanction of "wholesale suppression" of the evidence in this case. Rather than ignore intentional police misconduct and violations of the Fourth Amendment through use of the severance doctrine to avoid this harsh remedy, I think the more appropriate mechanism, if such relief is appropriate, is the considered application of the exclusionary rule. Indeed, the real question is not whether the severance doctrine applies in this case but whether the exclusionary rule should be used to sanction the misconduct committed by law enforcement.

---

[6] I further fail to see how authorizing a search for body parts such as blood, fluids and tissue does not make this warrant a general warrant.

13

"The normal rule is that 'all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in state court.'" *Grayson*, 336 S.W.3d at 146 (quoting *Mapp*, 367 U.S. at 655).[7]

> Although this exclusionary principle is driven by dual "considerations of deterrence and of judicial integrity," the deterrence rationale is paramount: "The rule is calculated to prevent, not to repair. Its purpose is to deter−to compel respect for the constitutional guaranty in the only effectively available way−by removing the incentive to disregard it."

*Id*. at 147 (internal citations omitted). Several exceptions to the apparent harshness of the exclusionary rule have been crafted by the courts where exclusion of the evidence obtained in violation of Fourth Amendment rights would not serve to deter future violations. For example, in *Leon*, the United States Supreme Court held that evidence obtained by police officers in objectively reasonable reliance on a subsequently invalidated search warrant should not be suppressed pursuant to the exclusionary rule. *Leon*, 468 U.S. at 922. "The rationale for the exception to exclusion is that 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.'" *Robinson*, 454 S.W.3d at 442 (quoting *Leon*, 468 U.S. at

---

[7] There appears to be tension between this statement and the further limiting of the exclusionary rule by the United States Supreme Court in cases like *Herring* and *Davis*, in which the Supreme Court has imposed a "more rigorous weighing of [the exclusionary rule's] costs and deterrence benefits" and "recalibrated our cost-benefit analysis in exclusion cases to focus the inquiry on the 'flagrancy of the police misconduct' at issue.'" *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011). The Missouri Supreme Court has cited approvingly of *Davis* and followed its precedent in stating that "the harshness of the exclusionary rule is triggered only when police practices are 'deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system.'" *Johnson*, 354 S.W.3d at 633 (quoting *Davis*, 131 S. Ct. at 2428). Regardless, the *Grayson* approach is still appropriately the default under the Missouri Supreme Court's precedent. *Johnson* merely held that when an officer acts in objectively reasonable reliance on binding appellate precedent, a search that later is deemed unlawful does not trigger the protections of the exclusionary rule. *Id*. at 633. This does not explicitly conflict with Missouri precedent, which has incorporated exceptions to this general rule of exclusion, that take into account, in deciding whether to apply the exclusionary rule, the flagrancy of police conduct and the likelihood that the consequences of exclusion will have a deterrent effect on police misconduct.

922). Similarly, the independent source rule, inevitable discovery, and attenuation doctrines are additional exceptions where courts have found that the balance of factors is such that the harm to society by exclusion of the evidence outweighs the societal good the exclusionary rule is meant to further; i.e., protecting the interests furthered by the Fourth Amendment. *See, e.g., Grayson*, 336 S.W.3d at 147-50 (discussing the exclusionary rule and exceptions thereto).

In light of the purposes of and exceptions to the exclusionary rule, more recently the question of whether the exclusionary rule should be applied has been formulated as the following:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 555 U.S. 135, 144 (2009).

The conduct at issue in this case is sufficiently egregious to warrant the application of the exclusionary rule. Applying the exclusionary rule here would result in "appreciable deterrence", as the conduct here is a deliberate circumvention of the basic requirement that probable cause be established before law enforcement may enter and search for items in the home. The detective's testimony suggests that the arbitrary checking the corpse clause box for convenience was not a onetime occurrence but is more widespread. The testimony even suggests that this may be a regular practice of this detective and possibly a regular practice of the Kansas City Police Department.

15

The second question here is whether the benefits of applying the exclusionary rule outweigh the costs. The United States Supreme Court has found in several cases that the benefits of applying the rule do not outweigh the costs, but in each of those cases the police were found to be acting in good faith. *See, e.g.*, *Leon*, 468 U.S. at 922 (when police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant); *Illinois v. Krull*, 480 U.S. 340, 349-350 (1987) (exclusionary rule does not apply to warrantless administrative searches performed in good-faith reliance on a statute later declared unconstitutional); *Arizona v. Evans*, 514 U.S. 1, 14-15 (1995) (exclusionary rule does not apply where police reasonably rely in good faith on mistaken information in a court's database that an arrest warrant was outstanding).

On the other hand, cases in which the Supreme Court has found abuses giving rise to the exclusionary rule include conduct that is patently unconstitutional. *See, e.g., Weeks v. United States*, 232 U.S. 383, 398 (1914) (overruled by *Mapp*, 367 U.S. at 655) (exclusionary rule applicable where officers broke into defendant's home without a warrant and could not have gotten a warrant had they tried, as they were lacking in any sworn or particularized information to justify the warrant); *Mapp*, 367 U.S. at 655-657 (exclusionary rule applied where officers forced open door to home with a false warrant in a flagrant or deliberate violation of rights).

Between the extremes of innocent good-faith mistakes and deliberate and flagrantly abusive violations of Fourth Amendment rights, exists the vast middle where many of these cases arise. Bare negligence in obtaining a warrant does not give rise to a

16

Fourth Amendment violation and does not trigger the exclusionary rule. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (when attacking factual statements made in an affidavit supporting a warrant, there must be allegations of deliberate falsehood or reckless disregard for the truth and allegations of negligence or innocent mistake are insufficient). However, systemic negligence or recklessness do trigger the exclusionary rule. *See Herring*, 555 U.S. at 146.

The trial court clearly found the conduct at issue to be deliberate misconduct by the detective. The trial court found that "Officer Estes acknowledged that he *intentionally* checked a box identifying that probable cause existed to search for 'deceased human fetus or corpse, or part thereof,' *knowing* that to be a false statement." (emphasis added). In addition, the trial court found that Detective Estes "disingenuously failed to call the Court's attention to the fact that he had checked that box [and] cannot reasonably be found to have been acting on an objective good faith belief that the warrant was valid [ . . . . ]. Further, the trial court found "[i]t would be a miscarriage of justice to permit an officer to *knowingly* bypass the particularity requirement of a warrant by checking boxes that allow officers to search for items where no probable cause exists [ . . . . ]" (emphasis added). We must defer to the trial court's findings on credibility. *State v. Avent*, 432 S.W.3d 249, 252 (Mo. App. W.D. 2014). Detective Estes is a twenty-year veteran of the Kansas City Police Department. This was an intentional act of including items for which the police knew there was no probable cause to search. It rose above mere negligence and is clearly no typographical error. The conduct at issue here, the deliberate

17

circumvention of fundamental Fourth Amendment protections for the sake of convenience, is exactly the type of conduct that the exclusionary rule was crafted to deter.

Bad faith must preclude the application of the severance doctrine because the alternative holding, adopted here by the majority, runs contrary to the underlying purpose of the doctrine, which was to save warrants containing only minor defects because of innocent mistakes made by law enforcement. I fear that the majority opinion will inevitably result in the courts ignoring deliberate constitutional violations in all but the most egregious of cases. Accordingly, I would affirm the trial court's suppression of the evidence in this case because the application of the exclusionary rule would lead to appreciable deterrence of the intentional misconduct demonstrated by the Kansas City Police Department and the benefits of applying the rule here would outweigh the costs.

I respectfully dissent.

_____
Gary D. Witt, Judge

18



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STATE OF MISSOURI, )
)
Appellant, )
)
v. )
)
) **WD78328**
) **(Consolidated with WD78329)**
PHILLIP DOUGLASS, )
)
Respondent, ) **OPINION FILED:**
and ) **March 29, 2016**
)
)
JENNIFER M. GAULTER, )
)
Respondent. )

## DISSENTING OPINION

The Fourth Amendment reminds us that a civilized society is often defined by how it treats its weakest members. Today, this court's majority opinion has defined our society as one that is more concerned with the "end" than the "means" and, in so doing, has lowered the bar for rights even our "weakest members" should reasonably and lawfully expect under the Fourth Amendment. It is a dangerously slippery slope that I cannot support. Thus, I respectfully dissent.

Though I join Judge Witt in the disdain he expresses in his dissenting opinion regarding the bad faith exhibited by law enforcement in obtaining the subject warrant,[1] I write separately to express my dissent with the majority opinion for a separate reason.

Plainly and simply, the corpse provision within the subject search warrant that authorizes a search for any part of a deceased human fetus or corpse is so broad that it swallows everything else identified in the subject warrant—no matter how "particularized" the other items may be. Any "part" of a deceased human fetus or corpse would include any microscopic particle that attaches within it the signature of human DNA—whether it be fingerprints, tissue, blood (or any remnant thereof), or other fluids.[2] Necessarily, then, a corpse provision authorizes a search far more broad than a search for purses, perfume, or other smaller personal property items. A corpse provision authorizes investigation of microscopic fibers found within every square inch of a home; nothing in the home is off limits; no space is too small for a search within the parameters of such a warrant provision.

"A warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." *United States v. Sells*, 463 F.3d 1148, 1160 (10th Cir. 2006). "[M]erely counting parts, without any evaluation of the *practical effect* of those parts, is an improperly 'hypertechnical' interpretation of the search authorized by the warrant." *Id.* (emphasis added).

---

[1] I also believe that the vast majority of law enforcement officers in the State of Missouri would express chagrin upon hearing the fact pattern of this case—for they understand that "protecting" the public includes "serving" freedoms guaranteed by the United States Constitution.

[2] The majority opinion somehow interprets "part" of a corpse to be limited to "body parts," such as a limb. However, the corpse provision in question is not so limited. Thus, where the majority opinion suggests that small personal items like jewelry and keys would encompass a broader search than "parts of a corpse," the majority opinion is plainly and simply wrong. We live in a world where crime scene investigators are able to perform a search for a "deceased human fetus or corpse, or part thereof," in such a fashion that they are able to collect evidence so small that it would otherwise escape notice by the naked eye.

Here, a corpse provision denotes the idea that the investigation by law enforcement is a homicide investigation, not an investigation relating to theft of a Prada purse, Bestie sunglasses, or a Mary Kay make-up brush. And where a search warrant for stolen personal property authorizes a search for any part of a deceased fetus or corpse (when the police are not otherwise conducting a missing person investigation, in which a search for body parts would be relevant to seeking the warrant in the first instance), the search warrant has been transformed into one that unlawfully authorizes "a general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), "with unbridled discretion." *United States v. Christine*, 687 F.2d 749, 753 (3rd Cir. 1982). As such, I believe the "practical effect" of unlawfully (and in bad faith) adding the corpse provision in the present case creates a warrant "so broad and invasive that [it] contaminate[s] the whole warrant," *Sells*, 463 F.3d at 1160, which violates the Fourth Amendment and supports the suppression ruling of the trial court. *See State v. Horsey*, 676 S.W.2d 847, 853 (Mo. App. S.D. 1984) (concluding that suppression was justified where the "overall tenor of the warrant smacks of a general warrant or an abuse of the prospective availability of redaction" (internal quotation omitted)). "It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed. The cost to society of sanctioning the use of general warrants—abhorrence for which gave birth to the Fourth Amendment—is intolerable by any measure. No criminal case exists even suggesting the contrary." *Christine*, 687 F.2d at 758 (footnote omitted).

The exclusionary rule "serves two distinct purposes: preserving the integrity of the judicial system and deterring official misconduct." Michael H. Pryor, *The Exclusionary Rule*, 75 Geo. L.J. 845, 846 (1987). *See also Michigan v. Tucker*, 417 U.S. 433, 447-49 (1974). Here, where the warrant-seeking police officer intentionally misrepresented that probable cause existed

3

to include a corpse provision in the warrant and, as the trial court found, "disingenuously failed to call the [warrant-issuing judge's] attention to the fact that [the officer] had checked the [corpse provision] box," official misconduct by the warrant-seeking officer has caused the integrity of the judicial system to be compromised. The trial court's suppression ruling should be affirmed. Anything less ignores the intent of the Fourth Amendment and corresponding dual purpose for the exclusionary rule.

Mark D. Pfeiffer, Judge